———o———

STATE OF MISSOURI, *ex rel.* STANFORD GRAVES, Relator, *vs.* WILSON PRIMM, JUDGE OF ST. LOUIS CRIMINAL COURT, Respondent.

1. *Court records—Amendment of at subsequent terms—How made.*—A court may, at subsequent terms, set right mere forms in its judgment or correct misprisions of its clerks, or mere clerical errors, so as to conform the record to the truth. And the corrections may be made from the judge's docket, or clerk's minutes, or other records pertaining to the case, but not from extraneous testimony such as affidavits.

2. *Practice, criminal—Judgments written up after proceedings, etc.*—Judgments in criminal causes are not objectionable, because transcribed after the proceedings are over, and during the absence of the accused.

3. *Limitation to prosecution—Entry setting aside defective indictment—Nolle prosequi—New indictment—Constr. Stat.*—The scope and intention of section 5, art. I, of the statute of limitations, (Wagn. Stat., 913) was, that where a prosecution fails on account of a defective indictment, the time during which it is pending shall not be computed as a part of the time limited for prosecution. And it is immaterial whether by the terms of the docket entry the indictment is "set aside" or *nolle pros'd,* the effect is the same. And the accused, after such action of the State, may, within the time prescribed, be again proceeded against for the same offense.

4. *Criminal law—Nolle prosequi—No bar to subsequent indictment.*—The mere entry of a *nolle prosequi* is no bar to another indictment or prosecution for the same offense.

*Mandamus to St. Louis Criminal Court.*

*D. W. Sadler,* for Relator.

I. The judgment entered was neither in form or in fact a *nolle prosequi,* but one "setting aside" the indictment. (See

2 Bouv. L. D., 231; 6 Mod., 261; 2 Mass., 172.) And *nolle prosequi* being ordered, it was the power and duty of the court to amend the record, so as to conform to the facts. (Priest vs. McMaster, 52 Mo., 60; State vs. Clark, 18 Mo., 434; 45 Mo., 571.)

II. The accused having exhausted his remedy in the criminal court, and having no other remedy, is entitled to *mandamus*. (Williams vs. Cooper Co. Ct., 27 Mo., 225; State, *ex rel.* Hixon, vs. Lafayette Co. Ct., 41 Mo., 38; 23 Mo., 449; 41 Mo., 221; 48 Mo., 112; State vs. Governor, 39 Mo., 388; see also, Vernon vs. Beggs, 1 Mo., 117, 274; State vs. Wilson, 49 Mo., 146; State *ex rel.* vs. Lafayette Co. Ct., 41 Mo., 221; Astor vs. Chambers, 1 Mo., 191; 10 Mo., 742; *Ex parte* Crane, 5 Pet., 190; 13 Pet., 279, 404; Judges vs. People, 18 Wend., 79; People vs. Judges, 20 Wend., 658; *Ex parte* Cox, 10 Mo., 742.)

*Stanford Graves*, in *propria persona*, cited 19 Mo. 408; 4 Ohio, 45; 3 Cow., 89; 14 Me., 263; 20 Wend., 602; 3 Mont., 295; 52 Mo., 60; 45 Mo., 571; 18 Mo., 434; 12 Pet., 492; 11 Mass., 417; 2 Ohio, 32; Cowp., 378; Tap. Mand., 238; 3 Blackst., 110; Gen. Stat. 1865, p. 853, § 12; id., p. 744, § 5; Bouv. L. D., 648.

*Hockaday*, *Attorney General*, for Respondent.

I. Relator seeks by *mandamus* to compel the criminal court to expunge its judgment on the strength of parol evidence, at a subsequent term. This, manifestly, cannot be done. (Priest vs. McMaster, 52 Mo., 62; 3 Bl. Com., 24; 12 Pet., 492; Tap. Mand., 228; 12 Mo., 598; 8 Mo. 235; 11 Mo., 511.)

II. Judge Primm's private docket was only a memorandum book and no part of the record. (2 Ohio, 129.)

III. It is immaterial whether the words "quashed," "set aside" or "reversed" or "*nol. pros.*" were used. The object clearly appears from the records to be, the holding of defendant to answer a new indictment, because the first was defective in law. There is but one case where a "*nolle prosequi*"

operates as an effectual discharge; that is, where it is entered without the defendant's consent, after the jury is sworn. (U. S. vs. Farring, 4 Cr. [U. S. C. Ct.], 465; U. S. vs. Shoemaker, 2 McLean, 114.) In all other cases he may be afterwards re-indicted. Even upon the same indictment fresh process may be awarded. (Chit. Crim. Law 480; Hawks Pr. N. C., vol. 3, p. 613; 13 N. C., 256; State vs. Howard, S. C., 15 Rich., 280; 9 Ala., 76.)

WAGNER, Judge, delivered the opinion of the court.

The relator asks this court to issue a writ of peremptory *mandamus* to compel the judge of the St. Louis criminal court to amend the records of that court. He states that at the January term, 1873, of the court, an indictment was found against him by the grand jury, charging him with having obtained money under false pretenses from one Bircher, in May, 1870; that the indictment was filed in the criminal court on the 17th day of January, 1873, and on the 18th of July, 1873, the case was set for trial, at which time the relator appeared and announced himself ready; that the circuit attorney, representing the State, then and there refused to prosecute the case further, and entered a *nolle prosequi* with the leave of the court, and the defendant was thereupon discharged. The petition further states that no other order was made relating to the indictment except simply to *nol. pros.* the same whilst the defendant and his counsel were in court on that day; but that several days thereafter, after the judgment of *nol. pros.* on the indictment had been entered against the State, one Voullaire, who was assisting the circuit attorney in the prosecution, drew up an entry for record, entirely different from a *nolle prosequi*, and applied to the judge of the court, in the absence of the relator and his attorneys, to order the clerk to put the said entry upon record as the judgment of the court; that the judge gave said form of entry to the clerk, and ordered him to place the same upon the records as the court's judgment. It is averred that the entry, as made, entirely changed the judgment of the court as given when

the case was called for trial, by making it appear that instead of a *nolle prosequi* having been entered, the indictment was set aside. The formal judgment as written up, and which is complained of by the relator, states that " this day comes the circuit attorney, who represents the State, as well as the defendant and his attorneys, and, by leave of the court, the circuit attorney says that the indictment pending against the defendant, and upon which he is to be tried, is insufficient and defective in law, and for these reasons he cannot further prosecute the defendant thereunder, and moves the court to set aside said indictment and order the defendant to be recognized and enter into bonds to appear at the next term of the court to answer another indictment for the same offense. Whereupon the court, having fully considered the matter, and being thereof fully advised, doth order, for the reasons stated by the circuit attorney, and with the consent of the said defendant and his attorneys, that said indictment be set aside and defendant be recognized to enter bonds in the sum of five thousand dollars to appear at the next term of this court, to answer another indictment for the same offense ; and thereupon it is further ordered that the defendant and his securities be discharged from all further liability by reason of the recognizance heretofore entered into for the appearance of the defendant to answer to the present indictment."

On the 18th day of September, 1873, three years and six months after the commission of the offense, the grand jury found another indictment for the same offense against the relator ; and if the judgment in the first case precluded any further proceedings, the second indictment would be barred by the statute of limitations. Assuming this to be the case, the relator at the next term of the court, after the judgment was written up, filed his motion to correct the records by expunging the judgment and inserting in lieu thereof that the State refused to prosecute, and entered a *nolle prosequi*. This motion the court refused. To sustain his view of the case, and to show that the record does not correctly represent the proceedings had in the case, the relator has submitted the affi-

davits of witnesses. But it is an established principle that oral evidence will not be received to impeach the verity of a solemn record. There is no doubt about the proposition that a court may always at subsequent terms set right mere forms in its judgment, or correct misprisions of its clerks, or mere clerical errors, so as to conform the record to the truth. But in all such cases the record should show the facts which authorize the entry. (Gibson vs. Chouteau, 45 Mo., 171; Priest vs. McMaster, 52 Mo., 60.)

On the private docket kept by the judge at the trial, after naming the case, the following entry appears: "cir. att'y says indictment is insufficient, and takes *nol. pros.* for that reason, and prays the court to hold the defendant over to answer new indictment, which is ordered. Bail taken in $5,000, with John E. Leggett as security. July 18, 1873." On the minutes kept by the clerk, after stating the title of the case, appears the following entry : "*Nol. pros.* by cir. att'y by reason of defective indictment. Defendant held to answer in the sum of $5,000 to answer new indictment. Recog. $5,000, John E. Leggett, sec'ry." It will thus be seen by the records made by the officers of the court at the time, that although the words "*nol. pros.*" are used, the indictment was discontinued by reason of its defectiveness. The accused was discharged from the old indictment, but he was required to enter into a new recognizance to answer to another indictment which might be found against him for the same offense—which he accordingly did.

There is nothing in the argument that the judgment was written up after the proceedings in the court, and during the absence of the accused. The formal judgments are usually transcribed by the clerks afterwards, and are taken from the minutes or docket entries made by the officers at the time; and if they are truly stated, they are not objectionable on that account. The only real difference in the case is, that the judgment says the indictment was set aside, whilst the relator contends that it should have shown that a *nol. pros.* was entered. Whatever mere words were used, we must look at

the substance. All the records conclusively prove that the relator was not absolutely discharged. The refusal to prosecute was by reason of the defectiveness of the indictment, but he was required immediately to enter into a new recognizance for his appearance, should another indictment be found against him for the same offense. The period prescribed as a limitation for the prosecution of the offense of which the relator stood charged was three years from the date of its commission (2 Wagn. Stat., 913, § 2.) But by the 5th section of the same act, in relation to criminal prosecutions, it is provided that "when any indictment or prosecution shall be quashed, set aside or reversed, the time during which the same was pending, shall not be computed as part of the time of the limitation prescribed for the offense." The indictment was neither " quashed " nor " reversed." There is no particular magic about the words " set aside." They simply mean to annul; to make void. A *nolle prosequi* has no greater effect. If proceedings are irregular, they may be set aside on motion of the party whom they injuriously affect. In construing the statute we are not to look so much at the mere verbiage, as to the plain and obvious meaning of the law. Its scope and intention were that when a prosecution failed on account of a defective indictment, the time during which the same was pending, should not be computed as a part of the time of limitation. The doctrine contended for by the relator would give a *nolle prosequi* the force and effect of a *retraxit*, which it never has. The effect of a *retraxit* is a bar to all actions of of a like or a similar nature (Bac. Abr., Nonsuit A.). A *nolle prosequi* is not a bar, even in a criminal prosecution. (Com. Dig., Pleader 2; Bac. Abr. Nonsuit.)

Wharton, in his criminal law, says that a *nolle prosequi* is the voluntary withdrawal by the prosecuting attorney of present proceeding on a particular bill. At common law it may at any time be retracted, and is not only no bar to a subsequent prosecution on another indictment, but may be so far canceled as to permit a revival of proceedings on the original bill. (1 Whart. Cr. Law, 7th Ed., § 513.) To sustain this

position the author cites a large number of adjudged cases, the most of which we have examined and find that they fully warrant the doctrine laid down in the text. In discussing this question in State vs. Lopez (19 Mo., 254), Mr. Justice Gamble said : " We have been asked to express an opinion on the plea in bar of the defendant in which he sets up an agreement made by him with the circuit attorney at a term of the criminal court, when there were ten indictments pending against him for embezzlement, by which agreement it was stipulated that the defendant should plead guilty upon four of the indictments, and that the State should enter a *nolle prosequi* on the others and discharge him from all liability to answer them. Under this agreement he pleaded guilty on the four, was sentenced and pardoned, and a *nolle prosequi* was entered on each of the other six. The plea alleges that the offense charged in the present indictment is the same with that charged in the four on which he pleaded guilty, was sentenced and pardoned, and alleges his identity. The State demurred to the plea, and the demurrer was sustained. We recognize no authority in the circuit attorney to make an agreement, by which any criminal shall be discharged from the claims of justice. The chief executive of the State alone can exercise the power of pardon. If a record was made in the criminal court, which would have the legal effect of discharging the defendant from responsibility for the six offenses for which the indictment were found, upon which a *nolle prosequi* was entered, such record would have its effect here as if there had been a plea of guilty, and the smallest punishment allowed by law had been imposed ; but if no entry of record has the effect of discharging the defendant, he cannot plead the agreement between himself and the circuit attorney as a discharge. If such agreement can be recognized anywhere, it must be by the Executive on an application for pardon, and with the Executive it might very properly, in many cases, have very great weight. It has been said that the *nolle prosequi* entered in the cases should be regarded as a *retraxit ;* but we do not feel authorized to say

that the entry on the record can have any greater legal effect in discharging the defendant from future prosecutions because of the supposed agreement, than it would have without such agreement. In other words, the operation of the entry made on the record can only be determined by its own terms. In the present case the plea states nothing more than a *nolle prosequi* in the ordinary form."

The above authorities abundantly demonstrate that the mere entry of a *nolle prosequi* is no bar to another indictment or prosecution for the same offense. The main argument of the relator, therefore, is founded upon a mistaken hypothesis. But from the minutes kept by the clerk, and the entry made upon the judge's docket, which are the only things by which an amendment could be made in this case, it does not appear that there was any intention of abandoning the prosecution, or that the record, when properly construed, will have that effect. The term *nolle prosequi* is used, but immediately in the same connection it is explained that it is done by reason of the defectiveness of the indictment, and an order is asked to hold the relator on a recognizance to answer a new indictment for the same offense. The order is at the time granted, and the accused gives the bail bond at once. He is then held, because he had no trial on account of the indictment being defective. The judgment as formerly written up on the records substantially states the facts as they occurred, and if the words " set aside " were stricken out and " *nolle prosequi* " were inserted in their stead, the cases would in no wise be altered. This change in phraseology would leave the legal effect the same.

For the foregoing reasons I think the judge of the criminal court decided correctly, and that the writ should be refused.

Judges Napton and Sherwood concur. Judges Vories and Hough absent.