Peelle, J.,
delivered the opinion of the court:
The question presented is, Was the claimant a citizen of' the United States at the date of the depredation complained of in February, 1866 ?
The claimant grounds his right to citizenship on the facts set forth in finding iv, which in brief are that he was born in Canada; declared his intention to become a citizen of the United States before the District Court of Woodbury County, Iowa, in March, 1858, and claims that thereafter on September 25,1863, he was admitted by the District Court of Richardson County, in the Territory of Nebraska, to become a citizen of the United States, but no record appears to have been made thereof.
Some thirty-three years thereafter, on the application and motion of the claimant before the District Court of said county for an order nunc pro tune to supply the record of his naturalization as a citizen- of the United States, on the ground that the judgment of naturalization “was through the negligence or inadvertence of the clerk unrecorded in the journal of said county, or if recorded the same has been lost or destroyed,” the court found that the claimant had been admitted to citizenship on September 25, 1863, and ordered that the judgment thereof be entered at large on the journal of the court mono pro 'tunc as of the date aforesaid.
The question of the claimant’s naturalization, as well as the existence of the record thereof, or of any memorandum paper *22 pertaining thereto, as the basis for the court’s jurisdiction, is controverted.by the defendants, and in support of their contention they rely on the facts set forth in findings A' and at, which, in substance, are that the records of the District Court of the Territory of Nebraska for the year 1863, and prior and subsequent thereto, are now complete and intact, showingentries in sundry cases at the Ararious terms of said court during that period, but no record of any proceedings showing the naturalization of the claimant or of any application therefor.
That no memorandum or other paper of any kind was in the records of said court on the 29th and 30th of March, 1897; Avhen the proceedings for the restoration of the records of naturalization were taken, and that it does not appear either .in the court’s proceedings or otherwise, that a certificate of naturalization was ever issued or delivered to the claimant.
The issue thus made raises the question, Did the District Court of Richardson County, Nebr., in 1897, have jurisdiction to supply the alleged record of naturalization of September, 1863, by a mine pro tunc order?
If it did, then this court is bound thereby and the claimant, being a citizen at the date of the depredation, is entitled to recover the sum of $7,750 found due him as set forth in finding ii; otherwise citizenship being jurisdictional under the act of March 3, 1891 (26 Stat. L., 851), the claimant’s petition must be dismissed.
From the facts found it is clear that the nunc pro tunc order of 1897 supplying an unrecorded judgment of naturalization alleged to have been rendered in 1863 was based entirely upon oral testimony. The court’s records of 1863 are not only silent as to what was done, but no paper or memorandum of any kind was among the records or before the court in 1897 from which the court could infer that such a proceeding had been commenced. The proceedings in 1897 therefore were not to amend a defective or incomplete record of which there was some basis to show a mistake, but were to supply an alleged omitted record in a matter wherein the record and files of the court not only fail to show that anjr proceedings were had, but fail to shoAV that any such proceedings had been commenced.
*23 Blackstone in his Commentaries (rol. 8, p. 407), in speaking of writs of error, says:
‘ ‘ Formerly the suitors were much perplexed bjT writs of error brought upon very slight or trivial grounds, as misspelling and other mistakes of the clerks, all which might be amended at common law, while all the proceedings were in paper, for they were then considered as only in fieri and therefore subject to the control of the courts. But when once the record was made up it was formerly held that by the common law no amendment could be permitted, unless within the very terms in which the judicial act as recorded was done; for during the term the record is in the breast of the court, but afterwards it admitted of no alteration. But now the courts are becoming more liberal and, where justice requires it, will allow of amendments at any term while the suit is depending, notwithstanding the record be made up and the term be passed. For they at present consider the proceedings as in fieri until judgment is given, and therefore that till then they have power to permit amendments by the common law; but when judgment is once given and enrolled, no amendment is permitted in any subsequent term.”
The origin and history of the general doctrine of amendments as outlined in that Commentary, page 408, are well stated in the case of Bilansky v. State of Minnesota (3 Minnesota, 427-429).
In that case, which was a capital one, the court said:
;‘If a jury is sworn according to law, or any other of the ■ordinary proceedings take place in the progress of the trial of a cause, and the clerk omits to record the fact, we see no reason \vh}T the record should not be made to conform to the truth, even after the term, when there exists no doubt about what the truth is. Every reason is in favor of such change being made; public justice demands it, as well for the punishment of the offender as for the protection of the accused, according as the nature of the proposed amendment may operate.”
Bishop on Criminal Law, section 1160, says:
“ When the term of the court has closed, it is too late to undo, at a subsequent term, what was done at the former term. A judgment of the court, for instance, can not then bo opened and modified or sot aside. Neither, it has been held, can the clerk at a subsequent term make an entiy of what truly transpired at the preceding term. But this refers *24 to the power of the clerk, proceeding of his own motion. The court may order nunopro tuno entries, as they are called, to supply some'omission in the entry of what was done at the preceding term; yet this is a power the extent of which is limited and not easily defined. In general, mere clerical errors may be amended in this way. So of the mistake of the clerk in the name of the judge before whom the indictment was found.”
In the case of In re Wight (134 U. S., 136-144), the court, after quoting the above section, says:
“The present case comes within the clause of this section, which declares the power of the court to make mono pro tuno entiles to supply omissions in the record of what was done at the time of the proceedings. An extensive list of authorities is cited in the footnote of Mr. Bishop, and among those which ' support the power of the court to make a record of some matter which was done at a former term, of which the clerk has made no entry, the following cases directly affirm that proposition: Galloway, Administrator, v. McKeithen, 5 Ired. (Law), 12; Hyde v. Curling, 10 Mo., 374; State v. Clark, 18 Mo., 432; Nelson v. Barker, 3 McLean, 379, and Blansky v. The State of Minnesota, 3 Minnesota, 427.”
In the case of Hyde v. Curling (supra), which was a civil suit, it was held, as stated in the syllabus, that—
“A court has power to order entries of proceedings had by the court at a previous term to be made nunc pro inonc, but where the court has omitted to make an order which it might or ought to have made, it can not at a subsequent term be made mono pro tuncT
And in the case of Nelson v. Barker (supra), where an objection was made to the amendment on the ground that there was nothing to amend by, the court said:
“At common law the court could only give leave to amend when there was something to amend by, and anciently amendments were required to be made at the term at which the error occurred, but now an amendment may be made at any time before judgment, and in some cases after judgment.”
But that ruling appears to' be based on section 32 of the judiciary act of 1789, known as the statute of jeofailes and amendments of the United States now embodied in Revised Statutes, section 954.
*25 So that tbe reliance by the claimant’s counsel on the case of In re Wight (supra) to support the doctrine that the court is not restricted to record evidence in amending its record after the term at which the proceedings were had does not appear to be well founded, as the court, citing section 954, saying, “ it is as liberal in the powers which it confers on the courts to make amendments as any of those enacted in more modern times,” adds that, “we are forced to the conclusion that the action of the Circuit Court in making the order for a wane pro tunc record, which showed that the case had been remanded from that court to the District Court prior to the timé when the sentence was passed upon the prisoner, was a legitimate exercise of power.”
It will thus be seen that the language in that opinion, saying in effect that the court is not restricted to record evidence in amending its record at a subsequent term, must be read in connection with section 954.
The Supreme Court of Indiana has been uniform in its holding that after the expiration of the term nune pro tunc enti’ies to amend .the. record of a proceeding at a prior term can only be made upon some record or memoradum paper or other minutes in the case from which it can be clearly shown what took place. (Boyd v. Blaisdell, 15 Ind., 73; Jenkins v. Long, 23 Ind., 460; Makepeace v. Lukens, 27 Ind., 437; Hamilton v. Burch, 28 Ind., 233; Miller v. Royce, 60 Ind., 189, and Schoonover v. Reed, 65 Ind., 313.)
In the last case cited the court, quoting from the case of Wilson v. Vance (55 Ind., 394), said:
“The office of a mine pro tunc entry is to make a record of what was previously done, but not then entered; not to make an order, now for then, but to. enter, now for then, an order previously made.”
That is to sajq the function of a nunc pro tunc entry is to enter now for then the order previously made and not to make an order now to supply the court’s omission to make one then.
To the same effect also are the decisions of the Supremo Court of Illinois. (Coughram v. Gutcheus, 18 Ill., 390, approved in 94 Ill., 525, and 165 Ill., 417.)
In the case of Balch v. Shaw (7 Cush., 282-284), in speaking *26 of the power of the courts during and after the term to correct clerical errors, the court said:
“There can be no doubt that it is competent for a court of record, under its general, inherent, and necessary authority, to correct the mistakes and supply the defect of its clerk or recording officer, so as to have the record conform to the actual facts and truth of the case, and that this may be done at any time as well after as during the term, mine pro Pune. The length of time in this case, between the granting of the license and. making up the record, does not take away the right or jurisdiction of the court.”
But the court further said:
“This was not a case of want of jurisdiction, in which the record can not be amended, because, there being an omission to act, there is nothing to record; in such case the defect is not in the record, but in the action of the court.”
The converse of that appears to us to apply to the present case; that is to say, there was nothing before the court making the nunc pro tune entry to show that it was the entry of an order previously made. There was no record or memo-rándum of any kind before the court from which it could be inferred that the procedings for the naturalization of the claimant had taken place or had ever been commenced, and for that reason the court’s jurisdiction was wanting unless the omission of such record and paper can be supplied by the recollection of witnesses a generation thereafter.
Furthermore, the matter was not in the breast, of the court, for the judge who held the court in 1863, as well as the clerk thereof, had theretofore died.
The proposition that a record can not be amended after the term unless there is something in the record to amend bjr is supported by many cases, other than those cited, some of which are Lynch v. Reynolds, 6 Bush. (Ky.), 547; Shackleford v. Levy, 63 Miss., 128; Smith v. Hood, 25 Pa., 218; State ex rel. v. Prim, 61 Mo., 166, and many other cases which might be cited.
Such was the view of Bishop in regard to the manner of making amendments, for in his Criminal Procedure, section 1315, he says:
“The better way is believed to be to make, in the record of the term at which the amendment is offered, an entry to the *27 effect that, whereas on inspection of the record of the preceding term an error therein appears, etc., it is considered that the same be corrected and amended, etc., setting out the amendment.’'
True, in the case of Balch v. Shaw (supra) it is said:
“It was further said in argument that th„ere was no sufficient material from which to make up the record. But the court of common pleas, having exclusive right and jurisdiction in the matter, were the proper judges of the necessity and propriety of extending the record, and of the proofs and of the sufficiency of the proofs txpon which to proceed.”
That was said with reference to the issue in that case, which was one of law, there being no question of fact in dispute, and that was that “ if the court should be of the opinion that there was a sufficient record of the order of the court of common pleas, made at the October term, 1824, to sell the demanded premises, judgment should be rendered for the tenant,” who was relying on the order then made to support his title acquired bjr purchase at the sale thereunder.
The court hold that there “was a sufficient record of the order of the court of common pleas” to sell the premises, and hence there was no question of jurisdiction; and the coxirt of common pleas having, as the court say, “the exclusive right and jurisdiction in the matter,” such eoiirt was the judge “of the proofs and of the sufficiency of the proofs ivponwhich to proceed."
In the case of Fay v. Wenzell (8 Cush., 315), which was a case of assumpsit on a promissory note, where the juiy returned a verdict for the plaintiff and the defendant moved for a new trial, as appears from a written motion filed in the case, no entry of the motion appeared on the docket, but there was an indorsement on the motion for a new trial made by the judge before whom the motion was argued, directing, in substance, that the motion should be overruled and judgment be entered upon the verdict, but no entry thereof was made on the docket. After the indorsement of the motion as aforesaid the case was continued from term to term.
The plaintiff contended that the entry was erroneous and had been made by mistake, and offered p'arol evidence thereof in addition to the written motion and the indorsement thereon, while the defendant insisted that the memorandum on the *28 docket constituted the record of the proceedings in the case, and denied the authority of the court to alter and annul the record of the doings of the conrt at a former term, and also objected to the competency of the evidence offered by the plaintiff; but the presiding judge overruled the objections and received the evidence and entered on the docket the following order:
“And now it appearing to the court here that the entry on the docket at the December term, 1848, ‘verdict set aside, new trial granted,’ is erroneous and was made by mistake, and that no such order was ever made by the court, it is now ordered that the said minute be struck out and erased; and it also fui’ther appearing that the entry in the docket at the December, term, 1849, ‘judgment on the verdict’ is erroneous, and that the same ought to be arrested, it is ordered by the court here that the said minute be struck out and erased. And now at the present term of court it is ordered and determined by the court that the motion of the defendant for a new trial be overruled and disallowed, and that judgment be now entered on the verdict.”
On appeal, the court, among other things, said:
“ In the present case the court of common pleas had the power to order this amendment of the record. The amount and kind of evidence requisite to satisfy that court, as to what was the real order of the court and what was the proper entry on the docket or extended record, must rest with that court. Having the authority to correct their own record, it is to be presumed that any amendment of the record made by them will be in accordance with the facts.”
There it will be observed there were papers among the files and indorsements thereon which gave the court jurisdiction in the premises, and jurisdiction once acquired the court could admit such evidence, oral or otherwise, as it saw fit to ascertain the truth of the matter.
The claimant’s counsel abty contend, and cite numerous authorities to support their contention, that a court of record has the inherent right and power to make nunc pro tunc entries to correct mistakes so as to conform its record to the actual truth of past transactions; and that contention, in view of the numerous authorities, both of the Supreme Court of the United States and of the several States, can not be controverted. But the authorities cited by the claimant, as well as others we have examined, are all in cases where it appeared *29 from the record that a cause was pending, and in many cases there was some memorandum, minute, or indorsement on the records or on the papers among the files sufficient to give the court jurisdiction to proceed; and where there is sufficient substance the record may be supplemented by oral testimony, but where there is a total absence of substance — i. e., no record, paper, or memorandum — from which it could be inferred that any such proceeding was even commenced, there is nothing to amend. Hence the alleged certificate of naturalization in this case purporting to be “an order mine pro tnne to supply omission in the records wherein the judgment of naturalization of the claimant as a citizen of the United States pronounced by the court at its September term, 1863, and which it is claimed was through negligence or inadvertence of the clerk unrecorded, or if recorded, lost or destroyed, is not conclusive and may properly be attacked in this court. (Thompson v. Whitman, 18 Wall., 457; Cole v. Cunningham, 133 U. S., 107; Simmons v. Saul, 138 U. S., 439, 448.)
While lapse of time in a proper case may not take away the right or jurisdiction of a court to make name fro tune entries to conform its record to the truth, it is an element to be considered in this case, where there is a total absence of any record showing that the claimant ever applied to become a citizen, and hence the name gyro tame entry was rather an original order made now for then than an entry made now for then of an order previously made.
In the case of Brown v. Coward (3 Hill, S. C.) where the clerk had made no entiy on the minutes of the court of a judgment in summary process, it was held that there was nothing on which a scire facias to revive could issue; nor would amotion to amend by entering judgment nunc gyro time he granted for the reason that there was no judgment to amend; that “where judicial proceedings are imperfect, the court to which they belong will amend them, as long as there is anything to.amend.” That language is applicable to the present case. There is no substance upon which to ground a right to amend, especially after the lapse of a generation.
Therefore the authorities cited bjr the claimant in support of the proposition that the certified copy of the record of naturalization of an alien, like any other record of a court, *30 imports verity, are not- in point, for the reason that there was nothing in the record or among the files of the court to show that any such judgment had either been entered or ordered to be entered. There was nothing to amend — no mistake to correct.
No certificate of naturalization appears to have been issued to the claimant at the time he claims to have been naturalized, and hence the beginning of th e proceeding as well as the action of the' court rests solety in .the recollection of witnesses. Therefore, we arc not disposed to accept the certificate of the nunc jpro tunc judgment of naturalization as sufficient to establish the claimant’s citizenship, and his petition will accordingly be dismissed.
Howry, J., did not sit in this case and took no part in the decision.