STATE of Missouri,
Plaintiff-Respondent,

v.

John Mark EVANS, Defendant-Appellant.

No. 43559.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 4, 1982.

Motion for Rehearing and/or Transfer
Denied June 18, 1982.

Application to Transfer Denied
Sept. 13, 1982.

---

Robert W. Meyers, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, Joseph Landolt, Asst. Pros. Atty., Union, for plaintiff-respondent.

DOWD, Presiding Judge.

John Mark Evans was charged with selling hashish, a controlled substance, in violation of Section 195.020 RSMo 1978. Upon a

jury verdict of guilty, the trial court sentenced Evans to five years imprisonment, suspended execution of the sentence, and placed Evans under probation supervision for five years. Evans appeals his conviction.

In January 1979, Clifford Collier of the Missouri State Highway Patrol was engaged in undercover investigation of drug activities in Crawford County. Through his work Collier became acquainted with a Crawford County resident, Cletus "Junior" Keller, who frequented a bowling alley in nearby Sullivan in Franklin County. On one occasion they were leaving the bowling alley with a third man when appellant approached them with an offer to sell hashish. After Collier asked about the price and quality, appellant suggested that they look at it. The four of them crossed the street to a parking lot and got into a pickup truck. Some time later, they stepped out of the truck and Collier gave appellant six dollars. Appellant then gave Collier a small aluminum foil packet, the group separated, and Collier left Sullivan for the night. A warrant for appellant's arrest was issued approximately seven months later, after Collier had completed his undercover investigation in the area.

Appellant asserts seven points of error by the trial court. Appellant first contends that the information charging him with sale of "hashish, a controlled substance," did not charge an offense since it did not allege that hashish (not itself a scheduled substance) is a form of "marihuana" within the meaning of Section 195.010(20) RSMo 1978.

As appellant notes, Rule 23.01(b)(2) requires the information to "[s]tate plainly, concisely, and definitely the essential facts constituting the offense charged ...." The challenged information charged that:

... the defendant, in violation of Section 195.020, RSMo, committed the felony of selling hashish, a controlled substance, punishable upon conviction under Section 195.200.1(4), RSMo, in that on the 25th day of January, 1979, in the County of Franklin, State of Missouri, the defendant knowingly sold Clifford R. Collier hashish, a controlled substance.

According to Section 195.020 RSMo 1978, it is unlawful to sell any controlled substance except as authorized elsewhere in the statute. Under Section 195.010(6), a "controlled substance" is a substance in Schedules I through V of the chapter. Those schedules appear in Section 195.017, and include "[a]ny material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, ... (j) marihuana ... (q) tetrahydrocannabinols." Section 195.010(20) defines marihuana as:

... all parts of the plant genus Cannabis in any species or form thereof, including, but not limited to Cannabis Sativa L., Cannabis Indica, Cannabis Americana, Cannabis Ruderalis, and Cannabis Gigantea, whether growing or not, the seeds thereof, the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seed or resin.

"Cannabis," "cannabis sativa," and "marijuana" are judicially recognized as synonymous terms. *State v. Simpson*, 534 S.W.2d 568, 570 (Mo.App.1976).

In a similar case, *State v. Starks*, 419 S.W.2d 82, 83 (Mo.1967), the defendant challenged the sufficiency of an information charging him with unlawful possession of a stimulant drug, amphetamine hydrochloride (not listed in the statute as a proscribed drug). Proof at trial showed that the packet contained amphetamine, a proscribed drug. The reviewing court found the information defective because no evidence in the record supported the state's contention on appeal that amphetamine hydrochloride is a compound or mixture containing amphetamine.

In this case, however, the uncontradicted evidence at trial showed that hashish is a derivative or concentrated form of marihuana, containing more resin and thus more tetrahydrocannabinols (the active ingredient in marihuana) than marihuana contains. Furthermore, hashish is a word with a commonly understood meaning. Webster's Third New International Dictionary defines

hashish as "a narcotic drug derived from the hemp (*Cannabis sativa*) that is smoked, chewed, or drunk for its intoxicating effect."

Although "hashish" is not specifically listed in the schedules, it is clearly included within the statutory definition of marihuana. *State v. Randall*, 540 S.W.2d 156, 159 (Mo.App.1976). Any derivative of marihuana is included as a controlled substance which is unlawful to sell.

■■■ An information is sufficient, first, if it states the essential elements of the offense charged so that the defendant is adequately apprised of the charge against him and, second, if final disposition of the charge will bar further prosecution for the same offense. *State v. Downs*, 593 S.W.2d 535, 540 (Mo.1980). We believe that the information charging appellant meets this test. Though the precise statutory language would have been preferable, we conclude that the failure of the information to expressly identify the relation between hashish and marihuana was not fatal. We may not hold an information insufficient for failure to follow a statute's exact words if it uses words of similar import. *State v. Parker*, 476 S.W.2d 513, 516 (Mo.1972).

Appellant next contends that the undercover patrolman's testimony with respect to the transaction and the hashish he purchased were inadmissible because this evidence was illegally obtained while the patrolman acted outside the scope of his authority.

■■ Appellant does not allege that the patrolman engaged in an illegal arrest or an illegal search or seizure. Appellant's arrest occurred several months after the transaction. Moreover, purchase of drugs by an undercover state patrolman is not a search or seizure. *State v. Kuhrts*, 571 S.W.2d 709, 713 (Mo.App.1978). Appellant's contention is that this patrolman's investigation exceeded his statutory authority because the superintendent of the state highway patrol did not assign him to work in Franklin County where the transaction occurred.

■■ Under Section 43.180 RSMo 1978, patrol members "have full power and authority as now or hereafter vested by law in peace officers when working ... under the direction of the superintendent of the state highway patrol ...." The patrolman testified at trial, without contradiction, that his immediate supervisor assigned him to undercover investigation in Crawford County. We do not interpret Section 43.180 as requiring the superintendent to personally give and supervise each patrolman's assignment. We believe that assignment and supervision by the immediate supervisor comes within the meaning of the statutory language. Section 43.180 also gives patrol members "full power and authority to make investigations connected with any crime of any nature." The statute does not restrict a state patrolman's investigatory power to a single county at a given time. The patrolman's testimony showed that contacts from his assigned drug investigation in Crawford County led him to a town in adjacent Franklin County. We conclude that the patrolman did not thereby exceed his statutory authority so as to render his subsequent testimony and the physical evidence he obtained inadmissible.

Appellant's third point is that the trial court erred in permitting the patrolman's in-court identification of appellant because it was based upon an impermissibly suggestive procedure.

The patrolman testified that he first saw and spoke with appellant outside the door of the bowling alley. It was a winter night, but there were lights at the front of the building and a few lights in the parking lot. No names were exchanged. The patrolman was in appellant's presence for approximately fifty minutes, while standing outside the bowling alley door, crossing the street, sitting in the cab of a pickup truck, and buying hashish from him next to the truck. The patrolman saw and spoke with appellant again for several minutes the following night under fluorescent lighting inside the bowling alley. They greeted each other in the bowling alley several times over the next few weeks.

The patrolman learned appellant's name by checking the truck's registration and then the registrant's driver's license. He requested the driver's license photograph so that he could determine whether the person whose name he had thus obtained was indeed the same person from whom he had purchased hashish. Appellant alleges that this viewing of a single photograph of appellant improperly influenced the patrolman and caused "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). We find nothing suggestive in the investigative procedure the patrolman used to match a face he knew with a name he did not know. Furthermore, even if we were to find that this procedure tended to suggest appellant's identity, the patrolman certainly had a basis for the in-court identification independent of the driver's license photograph. *See State v. Garrett*, 518 S.W.2d 97, 99 (Mo.App.1974); *State v. Goff*, 516 S.W.2d 818, 821 (Mo.App.1974). His testimony showed that he had ample opportunity to observe appellant in person both inside and outside the bowling alley. *See State v. Mentor*, 433 S.W.2d 816, 819 (Mo. 1968). The trial court properly admitted the patrolman's identification testimony.

Appellant's fourth point is that the patrolman's testimony relating statements of third persons about drugs was inadmissible hearsay. The patrolman testified that while he was at the bowling alley, a man known to him as "Junior" asked if he wanted to buy some marihuana. When the patrolman expressed interest, Junior said he would talk to a person named Steve. Soon Steve joined them and said the marihuana was outside. As they left the building, the three men encountered appellant just outside the door. Appellant contends this hearsay testimony prejudiced him by implying to the jury that he associated with drug dealers. As the prosecuting attorney asserted at trial, however, he offered the statements of Junior and Steve not for their truth, but rather to explain the patrolman's subsequent conduct. The statements, therefore, did not constitute hearsay and

the trial court committed no error in allowing the testimony. *State v. Giannini*, 606 S.W.2d 780, 781 (Mo.App.1980).

Appellant's fifth point is that the trial court erred in permitting the state's expert, a forensic chemist, to give his opinion that the purchased substance was hashish. Appellant argues that the chemist's remaining testimony merely indicates that the substance consisted of some organic material containing some quantity of tetrahydrocannabinol and did not show that the substance was hashish rather than marihuana.

The trial court, exercising sound discretion, determines the admissibility of expert opinion. That determination is reviewable only on the issue of abuse of discretion. *State v. Jones*, 518 S.W.2d 304, 311 (Mo. App.1975).

The chemist testified that he subjected the exhibit to several standard tests. He found that it contained tetrahydrocannabinol, the active resinous ingredient in marihuana, and determined by its physical characteristics that it was hashish. The trial court did not abuse its discretion by admitting this opinion testimony by an unchallenged expert. *See State v. Fedrick*, 600 S.W.2d 612, 612–13 (Mo.App.1980).

Appellant next claims that the evidence was insufficient to sustain a conviction for sale of a controlled substance because the evidence established neither the identity of the alleged vendor nor the identity of the substance allegedly sold.

Viewing the evidence in the light most favorable to the state, we are to determine whether reasonable persons could have found appellant guilty. The jury may believe or disbelieve the testimony of any witness, choosing to accept the state's evidence and reject appellant's. *State v. Stearns*, 617 S.W.2d 505, 506 (Mo.App.1981).

We find that the patrolman's testimony identifying appellant as the seller and the chemist's testimony identifying the substance as hashish provided sufficient evidence from which reasonable jurors could find appellant guilty as charged. The trial

court did not err in refusing to direct a verdict of acquittal.

Appellant's final point is that the trial court erred in permitting the trial to proceed after the prosecutor served an arrest warrant upon a defense witness immediately preceding trial. Appellant argues that service of the warrant intimidated the witness and adversely affected his ability to testify credibly. Appellant concedes that the witness' arrest is not a matter of record in this case, but he asserts without substantiation that it was "known to the court" and had a "readily imagined" effect. Where the record reflects no basis for appellant's allegations, he has not preserved his claim of error for our review. *Cf. State v. Greenlaw*, 593 S.W.2d 641, 644 (Mo.App. 1980) (allegation concerning closing argument not reviewable where record does not include argument).

Judgment affirmed.

GUNN and SIMON, JJ., concur.