STATE of Missouri, Respondent,

v.

Robert E. BULLINGTON, Appellant.

No. WD 34011.

Missouri Court of Appeals,
Western District.

Sept. 18, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Oct. 30, 1984.

Application to Transfer Denied
Dec. 18, 1984.

home of Mary Osborne by forcibly bursting a basement door. Mary and her two children, John and Pamela, were threatened by Bullington who held a shotgun and later taped their eyes and hands while he ransacked the house. Subsequently, Bullington left with Pamela as a hostage. Bullington was identified by Mary and John as the perpetrator of the crimes.

## I.

Addressing first the procedural points, we consider Bullington's contention that his prosecution under an indictment returned in July, 1981 was in excess of the court's jurisdiction because the indictment was beyond the three year statute of limitations for the crimes. He also argues, even assuming the prosecution was commenced within the statute of limitations, that he was entitled to be discharged because his trial was not conducted within the time limits provided in § 545.780, RSMo 1978. Discussion of these points requires a recounting of the history of this case and an associated charge of capital murder.

Mary Dames, Asst. Public Defender, 21st Judicial Circuit, Clayton, for appellant.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and SHANGLER and NUGENT, JJ.

CLARK, Presiding Judge.

Robert E. Bullington was jury tried and convicted of the multiple offenses of armed criminal action, burglary in the first degree and two counts of flourishing a dangerous and deadly weapon. He was sentenced, in the aggregate, to a term of 130 years. This appeal presents five points raising issues of procedure concerning admission and exclusion of evidence, jury instruction and limitations of time upon the state's entitlement to proceed with prosecution. The sufficiency of the evidence to sustain the convictions is not in contest.

From the evidence adduced at the trial, the jury was entitled to find that on September 3, 1977, Bullington entered the

On the original indictment, Bullington was charged with capital murder and kidnapping (as to the hostage, Pamela) and with the offenses here at issue, armed criminal action, burglary and flourishing a weapon. Trial proceeded on October 13, 1978 and convictions were had on all counts. On February 13, 1979, however, a new trial was ordered for Bullington because of the impermissible exclusion of women from jury venires in Jackson County. At that point, Bullington moved to sever the murder count from the remaining counts in accordance with Rule 24.04(a) which had become effective on January 1 of that year. A refusal of the trial judge to grant the severance resulted in a writ of prohibition taken to the Missouri Supreme Court where it was held that Rule 24.04(a) applied and the severance was to be granted. *State ex rel. Bullington v. Mason*, 593 S.W.2d 224 (Mo. banc 1980). From that point forward, the paths of the murder charge and the remaining counts diverge

and proceed separately to their respective conclusions.

The original charges prosecuted in the 1978 trial remained on the court's calendar in bifurcated form while Bullington pursued appeals questioning whether, on a second trial, the state was entitled to seek the death penalty as to the severed murder charge. It was ultimately held that the death penalty was not available in a second trial of the capital murder charge if the first trial had resulted in a lesser punishment. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). At this point, for reasons not apparent in this record, the state elected to seek a new indictment as to the offenses other than the murder charge and that indictment was returned July 7, 1981. At some time thereafter, apparently in September, 1981, the state entered a nolle prosequi as to the original indictment. Trial proceeded on the 1981 indictment commencing May 10, 1982 to a judgment of conviction.

Bullington first contends the 1981 indictment under which he was convicted should have been dismissed because, at the time that indictment was filed, more than three years had passed since the crime and prosecution was barred under the statute of limitations. He relies on § 556.036, RSMo 1978 [1] as the basis for the period of limitations. Although a three year period controls in either event, he is in error in the citation of the statute.

Section 556.036, on which Bullington relies is expressly declared by § 556.031(3), not to apply to or govern any offense committed prior to January 1, 1979. The prior statute, also setting a three year limitation generally for the prosecution of felonies and effective at the time of Bullington's crimes is § 541.230, RSMo 1969. Material to the point advanced by Bullington is the companion section from the prior statute revision, § 541.230, RSMo 1969, which reads:

"When an indictment or prosecution shall be quashed, set aside or reversed, the time during which the same was pending shall not be computed as part of the time of the limitation prescribed for the offense."

Because Bullington was under indictment, nol-prossed in September, 1981, continuously from 1977 until the new indictment was returned in 1981, it is apparent § 541.230, RSMo 1969 tolled the statute of limitations, § 541.230, RSMo 1969, if the entry nolle prosequi was the equivalent of a prosecution quashed, set aside or reversed. We conclude that it was.

At common law, proceedings on a particular bill could be retracted by the prosecution at any time without bar to a subsequent prosecution or revival of the original bill. Time accumulated under a withdrawn or defective indictment was not to be computed as part of any time of limitation. This concept is recognized as the law in Missouri as exemplified by *State ex rel. Lodwick v. Cottey*, 497 S.W.2d 873 (Mo. App.1973). There it was held that § 541.-230, RSMo 1969 operates to toll the period of limitations during pendency of an indictment even though the indictment is so defective as to require dismissal, a dismissal being equated to the statutory language, "quashed, set aside or reversed."

The question of whether a nolle prosequi is likewise the equivalent of setting aside an indictment or prosecution was considered in *State ex rel. Graves v. Primm*, 61 Mo. 166 (1875). There the record entry showed the indictment filed against relator had been set aside. The latter contended the prosecutor had actually filed a nolle prosequi and he sought a revision of the record to this effect. The court held the words "set aside" and "nolle prosequi" to be the same in legal effect.

On the basis of § 541.230, RSMo 1969, Bullington must be denied his entitlement to rely on a bar of the three year statute of limitations because the statute was tolled throughout the period of time when the indictment first returned was pending.

---

1. All citations are to RSMo 1978 except as otherwise noted.

Appellant next asserts that the trial court abused its discretion in failing to sustain his motion for dismissal in which he relied on the provisions of § 545.780, the Speedy Trial Act. He contends, as to the 1981 indictment, that neither arraignment nor trial were conducted within the time limits of the statute. He also argues that the time limit on retrial after entry of the new trial order was not observed.

On the face of the record, it is apparent more than 10 days passed between the filing of the 1981 indictment and the date of arraignment, more than 60 days passed between the date of the order granting a new trial and the trial and more than 180 days passed between arraignment on the 1981 indictment and the ultimate trial in 1982. Bullington contends he met his burden under the statute, citing *State v. Richmond*, 611 S.W.2d 351 (Mo.App.1980), and that the state failed to show excludability of any part of the delay. Although the state's brief dismisses the point as unworthy of response and therefore includes no argument or citation of authority, the appellate process is not amenable to or served by unreasoned, arbitrary dispositions of cases. We therefore consider the point on its merits, of necessity relying to some extent on the court's own research.

At the outset it is to be noted that Bullington makes no claim of trial delay as to the first trial of the case which commenced October 13, 1978 and was concluded February 13, 1979 by the order granting a new trial. Attention focuses instead on proceedings which commenced with the indictment returned July 7, 1981 and the trial which commenced in May of the following year. In presenting his argument, Bullington fails to address the issue of whether § 545.780, on which he relies is applicable to trial on charges of offenses which occurred in 1977. The question is whether the "speedy trial act" is applicable in this case where the law effective September 1, 1978 was not in existence at the time the crime was committed but was in force when the proceedings against the defendant were instituted.

As we observed in the previous portion of this opinion which considered appellant's claim under the statute of limitations, § 556.031 limits application of 1977 criminal code changes to the prosecution of crimes committed after January 1, 1979. The speedy trial act adopted concurrently in the 1977 session of the General Assembly is, of course, a procedural law. Any doubt as to whether § 556.031 was applicable to procedural as well as to substantive changes in the statutes was resolved by the decision in *State ex rel. Peach v. Bloom*, 576 S.W.2d 744 (Mo. banc 1979). The court there ruled that § 556.031 was applicable to procedural as well as substantive changes in the criminal statutes and, as a consequence, the defendant was subject to sentencing under the Second Offender Act which had been repealed as of the date of trial but which was in effect when the crime was committed.

The subject of application of the speedy trial law to prosecution of crimes committed before the effective date of that law has not been previously addressed in any case which has considered the effect of § 556.031. At least two prior decisions by this court, *State v. Newberry*, 605 S.W.2d 117 (Mo.1980) and *State v. Richmond*, 611 S.W.2d 351 (Mo.App.1980) have applied the act to pre-1979 crimes without discussing or considering the legislative directive of § 556.031. In neither case was relief granted to the defendant and thus the results would not have been altered were § 556.031 to have been construed as a limitation on application of the speedy trial act.

The general rule requiring utilization of the procedural law in effect as of the date of a criminal trial is set out in § 1.160 and, but for § 556.031, would entitle appellant here to invoke the provisions of the speedy trial act. Section 556.031, however, contains the phrase, " * * * the provisions of section 1.160, RSMo, notwithstanding." This was deemed by the court in *State ex rel. Peach v. Bloom, supra,* to have evidenced an intent by the legislature to exclude its 1977 revisions in the criminal law from the effect of § 1.160 and to relegate

offenses committed prior to January 1, 1979 to both the procedural and substantive laws in effect when the crimes were committed. This conclusion is unmistakable from the language of the opinion where it is said, " * * * we believe it is clear that the intent of the General Assembly in enacting section 556.031 was to make provisions of law existing prior to the new criminal code relating both as to punishment and to 'proceedings' applicable to all offenses committed prior to January 1, 1979." *State ex rel. Peach v. Bloom, supra*, p. 746.

▇ We conclude, therefore, that Bullington's claim of delay in arraignment and trial based on non-compliance by the state with the requirements of § 545.780 is without merit because the statute was not applicable where the crimes charged were committed prior to January 1, 1979. Bullington makes no other claim under this point, apart from the statutory ground of § 545.780. It is therefore unnecessary to consider whether delays in the case were or were not to be excluded in a time computation.

## II.

Appellant next contends the trial court erred in failing to suppress and in permitting admission in evidence at trial certain exhibits seized from appellant's home and from his motor vehicle. The searches, he argues, were without warrants and were unauthorized under the protection of the Fourth Amendment. For purposes of disposition of the point, we assume without deciding the warrantless intrusions were impermissible and therefore the details indicating how access to the home and vehicle were obtained will not be recounted.

Among the articles seized, those admitted in evidence in this trial were a paper bag and receipt from K–Mart, a penlight carton, a rug shampoo box, a piece of rope, the torn photo of an unidentified woman and a cancelled check. The association of any of these items with any pivotal fact issue in the case is left entirely to surmise because appellant's brief offers neither contention nor supporting argument that appellant's cause suffered any prejudice attributable to admission of the exhibits.

▇ We initially rule the point against appellant for his failure to assert, much less demonstrate, that he suffered any prejudice because the articles were received in evidence. Where a defendant claims error in reception of evidence, he has the burden of showing both error and prejudice. *State v. Lantigua*, 652 S.W.2d 177 (Mo.App.1983).

Considering, ex gratia, the possibility of any prejudice, none is perceived. The only exhibits even remotely connected to prosecution of the subject charges were the paper bag, receipt and penlight carton and the cancelled check. The carton, supposedly containing a penlight, was suggested by the prosecutor to have been purchased by Bullington and the penlight then used to illuminate the telephone wires at the victims' house as they were cut before or after entry to the house. No penlight was produced, only the carton, thus establishing at most that Bullington may at some time have had a penlight which he could have used to locate the telephone wires if it were he who cut them.

The cancelled check was introduced in evidence in connection with the direct examination by the state of witness Gronek. The latter initially testified that some two weeks before the crimes were committed, Bullington had come to his house in response to Gronek's advertisement of a gun for sale. Bullington purchased the gun and supplied Gronek personal identification. Gronek pointed out appellant at trial as the person who had purchased the gun and whose credentials had demonstrated him to be Robert E. Bullington. The prosecutor then produced the cancelled check and Gronek confirmed the check as one given to him by Bullington in payment for the gun. The weapon itself was not produced and apparently had never been recovered.

In *State v. Miller*, 650 S.W.2d 619 (Mo. banc 1983), the court reaffirmed the long-

standing rule that harmless error in the admission of evidence will not warrant reversal of a conviction. The court further held that error is harmless if the court is able to conclude beyond a reasonable doubt that the erroneously received evidence was harmless to defendant's cause. The weight of other proper evidence of guilt also was considered by the court as bearing on the evaluation of the erroneously received evidence. *See also State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972).

The exhibits which appellant claims were erroneously received in this case cannot be said to have prejudiced appellant's case when those exhibits are evaluated in the context of the issues in the case and the other evidence. The penlight carton was so far removed from any fact tending to prove appellant's guilt that it should have been excluded as irrelevant. That same irrelevancy also operates to mitigate a claim of prejudice. The carton was irrelevant because there was no proof the contents were associated with the crime or with Bullington's presence at the scene. Perforce, the exhibit could not have caused prejudice to appellant. As to the cancelled check, that evidence was surplus and at most, cumulative. Witness Gronek identified Bullington as the purchaser of the gun, not by reason of the cancelled check, but because Bullington told Gronek at the time who he was and provided identification. Moreover, the possible prejudice from the exhibits, if any there was, is diluted by all the other evidence in the case, including unequivocal identification of Bullington by the two victims.

Under the standard announced in *State v. Miller, supra,* we conclude that the evidence of which Bullington complains was harmless beyond a reasonable doubt. The point is ruled against appellant.

### III.

The final two points advanced by appellant lend themselves to conjunctive discussion. Both concern the subject of eyewitness identification of Bullington by the surviving victims. The points of asserted error are (a) that the trial court erred in excluding defense evidence on the reliability of eyewitness identification, and (b) that the trial court erred in refusing a not in MAI instruction on the state's burden of proof as to eyewitness identification.

Prior to trial, the defense endorsed Robert Buckhout as an expert witness. Drawing from the statements made by counsel to the trial court, it appears that Buckhout, a New York resident, has conducted studies and has engaged in empirical research on eyewitness identification, particularly in surroundings of stress. As phrased in appellant's brief, "Appellant offered Dr. Buckhout to testify as to his research on the effects of stress in eyewitness identification and to the theory and research held by experimental and social psychologists which challenges commonly held beliefs about human perception among laymen." The state presented a motion in limine to preclude any testimony on the subject by Buckhout and the motion was sustained. At trial the defense renewed its intention to call Buckhout, the state objected and the objection was sustained.

The offer of proof as to Buckhout's testimony consisted of a brief narrative statement by defense counsel. This method had been agreed to in advance by counsel and the court to avoid the expense of transporting the witness to Missouri and payment of witness fees. Unfortunately, the choice of this alternative leaves the prospective content of the witness's testimony to speculation and conjecture.

The proper procedure for an offer of proof as to a witness who is, on objection, precluded from testifying is to present and preserve the offer by questions to and answers by the witness from the stand. *State v. Sullivan,* 553 S.W.2d 510 (Mo.App. 1977). An offer of proof may, however, be in narrative form through a summation by counsel, but if so, the summation must be definite, specific and set out the content of the testimony to demonstrate its admissibility. *McMillin v. McMillin,* 633 S.W.2d 223 (Mo.App.1982). When a party fails to make an offer of proof in question and

answer form, the risk is present that a reviewing court will find the offer insufficient. *Stapleton v. Griewe*, 602 S.W.2d 810 (Mo.App.1980). This is the situation in the present case.

█ There is no dearth of authority on the subject of expert testimony offered in criminal trials where a significant if not exclusive component of the prosecution case is the identification of the accused by eyewitnesses. The obvious purpose of such testimony is to acquaint the jury with the results of tests and research on witness perceptions and to apply that data to the jury's determination of what weight is given the testimony of the eyewitnesses it has heard. The majority of courts which have considered the question have ruled the expert testimony to be of no proper assistance because it tends to invade the function the jury is impaneled to perform. Where the expert witness defines limits of perception in laboratory conditions and relates those to the conditions which prevailed in the case at bar, the result is a comment on the weight and credibility of the testimony the opponent's witnesses have given. *United States v. Thevis*, 665 F.2d 616 (5th Cir.1982); *United States v. Fosher*, 590 F.2d 381 (1st Cir.1979); *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973). The cited cases have held that probing cross-examination is an adequate tool for presenting to the jury the facts necessary for the jury to evaluate the reliability of the identification evidence.

An attempt to apply this analysis to the subject case is thwarted at the threshold because there is no record of the testimony Buckhout would have given. Appellant appears to concede that expert testimony amounting to adverse comment on reliability of testimony given by a specific witness is not admissible. He contends, however, that Buckhout's evidence was not of that nature but instead consisted of "his opinion of what inferences he could draw from certain facts based on his scientific knowledge." How this concept would be implemented by counsel's questions and the witness's responses is not delineated. In-

stead, the record in the offer of proof shows that Buckhout was to apply his research to the specifics of this case and in particular, to the identification made by the two witnesses after a twenty second viewing under the stress of a brandished weapon.

Counsel have cited no Missouri case which has yet ruled on the admissibility of expert testimony dealing with the scientific reliability of eyewitnesses identification, and independent research has disclosed none. Without the actual testimony of the expert, the conformity of the proof in this case to that condemned in the cited cases or its qualification as the exception counsel advocates in appellant's brief cannot be discerned. We decline to undertake the formulation of an opinion on a matter of first impression in the state without a more substantial basis from which to proceed.

█ Despite this deficiency and the somewhat nebulous character of the argument supporting receipt of the Buckhout testimony, the point may be resolved on traditional grounds. The tendered evidence was objected to by the state on grounds of relevancy. The relevancy of testimony, where the evidence is of doubtful probative value, is a matter left to the discretion of the trial judge and his decision is reviewable on appeal only for an abuse of discretion. *State v. Hensley*, 655 S.W.2d 810 (Mo.App.1983); *State v. Evans*, 637 S.W.2d 62 (Mo.App.1982). The trial court here cannot be charged with any abuse of discretion in rejecting the Buckhout evidence on the record presented.

The final sub-point advanced complains of the court's refusal to give a cautionary identification instruction tendered by defendant. The instruction informed the jury that the state bore the burden of proving beyond a reasonable doubt that identification of the defendant was accurate and that the jury should consider the opportunity of the witness to observe and the circumstances which existed. The proffered instruction was supplementary to Instruction 2.01 (MAI–CR2d) which was given.

■ Appellant's point fails by reason of MAI–CR2d Notes on Use which expressly forbid the giving of any additional instruction on the believability of witnesses or the effect, weight or value of their testimony. No instruction on the subject, other than MAI–CR2d 2.01 is proper. *State v. Borden,* 605 S.W.2d 88, 93 (Mo. banc 1980).

The judgment is affirmed.

All concur.

## ON MOTION FOR REHEARING

### PER CURIAM:

Appellant's motion for rehearing contends the opinion in this case errs in holding that defendant's cautionary identification instruction, refused by the trial court, violates MAI–CR2d Notes on Use. In support of his position, appellant cites *State v. Little,* 674 S.W.2d 541 (Mo.banc 1984), which holds that MAI does not forbid the giving of an identification instruction. Appellant argues that the point should have been considered in this case, not on the strictures of MAI–CR2d, but upon the discretionary authority of the trial court and the contended abuse of that discretion.

The instruction offered by appellant in this case is patterned after the "Telfaire Instruction", so named from *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972). The instruction emphasizes the burden on the state to prove identification beyond a reasonable doubt and directs the jury to consider the capacity, opportunity and circumstances of the witnesses affecting their ability to make the identification. The instruction offered and refused in *State v. Little, supra,* is not set out in the opinion or otherwise described except as an "identification instruction." We assume that it was essentially the same in content as the instruction in this case.

MAI–CR2d 2.01 informs the jury that it alone must decide upon the believability of witnesses and in doing so, the jury may take into consideration the ability and opportunity of the witness to observe and remember. Notes on Use 2 following MAI–CR2d 2.01 prohibits any other or additional instruction on believability of witnesses or the weight or value of their testimony. *State v. Borden,* 605 S.W.2d 88, 93 (Mo. banc 1980), affirms that no added instruction as to the believability of a witness or the value of the witness' testimony is to be given.

The evidence given by an identification witness is evaluated by the jury for believability and, in so doing, the jury necessarily considers whether the witness had the opportunity and ability to observe and recall the features which made identification possible. MAI–CR2d 2.01 instructs the jury upon these factors. The Telfaire instruction repeats the content of MAI–CR2d 2.01 with particular stress upon identification evidence. It is an added instruction on the believability of witnesses and the value of their testimony.

The cases have repeatedly and consistently held that MAI–CR2d Notes on Use are to be religiously observed and a failure to instruct in conformity therewith results in presumptive error. *State v. Mee,* 643 S.W.2d 601 (Mo.App.1982); *State v. Franks,* 643 S.W.2d 624 (Mo.App.1982). Notwithstanding the comment contained in *State v. Little, supra,* the identification instruction offered by appellant in this case could not have been given without violating MAI–CR2d 2.01 Notes on Use. We are unwilling to accept appellant's argument that *State v. Little* has, in effect, modified MAI–CR2d sub silentio. Unless and until the Supreme Court expressly directs that MAI–CR2d or the Notes on Use be changed, the trial courts are obligated to instruct juries in accordance with the pattern instructions. With like effect, a failure to follow MAI–CR2d must result in presumptive error.

The motion for rehearing is overruled and the motion to transfer is denied.