**STATE of Missouri, Plaintiff-Respondent,**

v.

**Willie DIXON, Defendant-Appellant.**

**No. 38490.**

Missouri Court of Appeals, St. Louis District, Division One.

April 4, 1978.

Motion for Rehearing and/or Transfer Denied May 9, 1978.

Robert C. Babione, Public Defender, Thomas R. Motley, Asst. Public Defender, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, Paul R. Otto, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Henry Fredericks, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of two counts of murder in the second degree and resultant 20 year sentences to be served consecutively. We affirm.

Some recitation of the evidence is necessary in order to discuss defendant's points. Seven white youths came to the house occupied by defendant at approximately 9:00 p. m. to purchase drugs from a group of black youths. The seven white youths left. About two hours later, two of the youths returned to purchase more drugs and remained. Approximately two hours later, defendant and one of the white youths, Robert Locke, known as Red, age 14, were in a separate room when they heard the other white youth, Albert Perkins, known as Caveman, age 16, call for help. Upon entering the room where Caveman and a group of at least four black youths were present, they saw that Caveman had been stabbed in the stomach and the knife was still in the wound. Red tried to leave but was stopped by one of the persons in the

room. There followed a two hour session of torture, stabbing, cutting and sexual abuse of Red and Caveman. Defendant was present during some, maybe all, of this conduct. The two victims were tied and wrapped in sheets. They were then carried by defendant and four other youths out of the house, down an alley, and were thrown into a sewer. The defendant was identified by a witness hiding in the backyard of defendant's residence as one of the persons who carried the bodies to the sewer. Defendant admitted to police his presence in the house during the period of the torture, stabbings, cutting and sexual abuse but denied his actual participation in those activities. He did admit to having helped clean up the blood after the bodies were disposed of. He also admitted to the girl friend of a co-participant that "he" (defendant) and "we" had killed two "honkies". The bodies of the victims were not discovered for two days. There was no medical evidence as to the time of death. Cause of death in each case was from the stab wounds. There was some evidence in defendant's confession to police that the victims may have been alive shortly before or at the time they were removed from the house.

On appeal, defendant raises two points. The first is that a fatal variance existed between the indictment and the jury instructions. Defendant's second point is that the court erred in refusing to require the state's witness who saw defendant and others carrying the bodies from the house to the sewer, to reveal the name of another person who had been present at the scene at an earlier time.

█ The variance complained of is in the language used to describe the method of inflicting death. The indictment used the terms: "strike, cut, stab, wound and beat." The instructions hypothesized guilt upon a finding that the victims died as a result of "striking, cutting, stabbing and putting him in a sewer causing injuries from which he died." The specific objection is to the "putting him in a sewer" language. Defendant has cited several cases involving disjunctive submissions not supported by the evidence or instructions which allowed defendant to be found guilty of some crime other than the one with which he was charged. *State v. Lusk*, 452 S.W.2d 219 (Mo.1970); *State v. Miles*, 488 S.W.2d 219 (Mo.App.1972); *State v. Shepard*, 442 S.W.2d 58 (Mo.banc 1969). We do not find those cases controlling of this one. The instructions here in no way changed the crimes with which the defendant was charged, they added an additional method of inflicting the injuries causing death. The submission was conjunctive and the additional means of death added to the state's burden. The jury was not permitted to convict on anything less than or different from that which was charged in the indictment. We find no error in the submission and no prejudice to defendant. *State v. Daegele*, 302 S.W.2d 20 (Mo.1957) [19–21]; *State v. Crossman*, 464 S.W.2d 36 (Mo.1971) [5, 6].

█ The witness who was hiding in the yard testified that he met another man in the yard with whom he engaged in sodomy. Both of them then left the area, but the witness returned to look for something he had lost. It was while he was looking for the lost item that he observed the disposition of the bodies. Upon cross-examination, he refused to divulge the name of the other man with whom he had initially been in the yard. The trial court refused to require the disclosure of the other man. Control of cross-examination is largely within the discretion of the trial court, and that discretion is wide. This is particularly true with reference to collateral matters. *State v. Johnson*, 486 S.W.2d 491 (Mo.1972) [4, 5]. Defendant premises error and prejudice solely upon the basis that revelation of the name might have resulted in calling the unnamed man as a witness to impeach the credibility of the other witness. Simply stated, this is a contention that the question was asked for discovery purposes. We, and apparently defendant, can see no other purpose. Cross-examination during the trial is not the time to conduct discovery. There is no contention made or indication in the record that defendant was not informed before the trial of the identity of the wit-

ness who testified or any indication that witness could not have been deposed. We find no error or abuse of discretion in the court's action in refusing to allow discovery on a collateral matter during the trial.

Judgment affirmed.

CLEMENS, P. J., and McMILLIAN, J., concur.