STATE of Missouri,
Plaintiff-Respondent,

v.

Eugene C. KIRK, Jr.,
Defendant-Appellant.

No. 62946.

Supreme Court of Missouri,
Division One.

Aug. 23, 1982.

Martin, Bahn & Cervantes, James M. Martin, Herbert Diekemper, Jr., St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BARDGETT, Judge.

Appellant Eugene C. Kirk was convicted by a jury of robbery in the first degree, § 569.020, RSMo 1978, and sentenced to life imprisonment as a persistent and dangerous offender pursuant to § 558.016, 1980 Laws of Mo. 495. This Court has jurisdiction. Mo.Const. art. V, § 3.

The sufficiency of the evidence is not questioned. This Court's review shows the evidence to have been sufficient to permit a jury to find appellant guilty beyond a reasonable doubt.

Under the evidence the jury could find beyond a reasonable doubt that at about 1:00 a. m. on Sunday, August 24, 1980, the appellant went into a restaurant in Richmond Heights, St. Louis County, Missouri, and, while holding the owner Joseph ⸺ and his father John ⸺ at gunpoint, robbed them of a substantial sum of money. Joseph and John were within a few feet of each other in a brightly lit, small room and both saw the robber's face very clearly. The appellant left firing one shot into a bottle.

On Monday, August 25, 1980, Officer Morris of the Richmond Heights police force was investigating a suspicious auto. He saw a black male, Noldun,[1] get out of

---

1. This person was referred to by various witnesses at trial as Noldun, Nolden, and Nolan. He will be referred to here as Noldun.

the car and walk about one block to a gasoline service station. Morris learned the suspicious auto was a stolen vehicle. Noldun went to another car in the service station which was occupied by appellant. Noldun motioned to appellant to move over. About then, Officer Morris spoke to Noldun and told him he wanted to ask him some questions. Officer Morris had radioed for a backup and two other police cars arrived— one driven by a Sergeant Wild and the other by Captain Curtis Wild. Captain Wild told Officer Morris to detain the two men, appellant and Noldun, there at the service station. The Captain then went to the restaurant about one block away, where he found one of the victims, John. He told John they had two men and asked John to go with him to look at them.

John went to the service station. He first saw Noldun, who was standing among some police officers, and told the Captain that Noldun was not the robber. John glanced in another direction and saw appellant sitting on a curb. John immediately said that was the robber and noted the appellant had a white sailor hat on his knee—the same type and color hat John saw the robber wear.

Appellant was arrested and subsequently Joseph was asked to view several men in a lineup. Joseph did so and saw one man struggling with the police—apparently he did not want to be in the lineup. Joseph recognized him as the robber after the police stood him up. It was the appellant.

Appellant Kirk filed timely pretrial motions to suppress all evidence of his showup and subsequent lineup identifications on the grounds that he was illegally detained without probable cause solely for the purpose of identification and that the pretrial identification procedures were impermissibly suggestive. An evidentiary hearing was held and the motion to suppress was overruled.

■ Appellant's first point on appeal contends that this was error. Both Joseph and John testified at trial and identified the appellant. No objection was made to that testimony. The point is not preserved for appellate review. *State v. McCrary*, 621 S.W.2d 266, 272 (Mo.banc 1981); *State v. Bryson*, 506 S.W.2d 358, 361 (Mo.1974). Nevertheless, the point will be reviewed *ex gratia*.

■ Appellant Kirk was detained at the service station during a routine investigation of a stolen auto. An individual who had just left a stolen vehicle attempted to get into appellant's car. When questioned, both men admitted knowing one another. The police officer who detained appellant had a reasonable suspicion with which to justify this detention. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *State v. Lasley*, 583 S.W.2d 511, 518 (Mo.banc 1979). Kirk was actually arrested only after John positively identified him as the man who had robbed him. The arresting officer then had facts sufficient for a prudent person to believe Kirk had committed a crime. *State v. Berry*, 609 S.W.2d 948, 952 (Mo. banc 1980). Probable cause existed for the arrest.

■ Appellant also alleges that this identification was conducted in an impermissibly suggestive manner. The facts do not support such a contention. Appellant was sitting by himself on a curb at the gas station when John arrived. His companion was surrounded by police a short distance away. In spite of this, John immediately identified appellant, not the other individual, as the man who had robbed him.

The second out-of-court identification of which appellant complains was the lineup identification by Joseph. Having established that the arrest which preceded the lineup was valid, we need only to examine the lineup's alleged suggestiveness.

■ The lineup was held the day following the robbery. The height of three of the participants was between five feet six or seven inches, another participant was five feet ten inches tall. Appellant was six feet three inches tall. A lineup does not require exact physical conformity of participants, including height. *State v. Proctor*, 535 S.W.2d 141, 143 (Mo.App.1976). The first description of the robber given by Jo-

seph and John approximated his height at around five feet ten inches. The other participants fitted this general description, yet Joseph immediately picked Kirk as the man who had robbed him. Joseph had been in a small, well-lit room with the robber for four minutes, his opportunity to observe him was excellent. None of these circumstances reveal an impermissible suggestiveness.

Appellant finally argues that the witness should not have been allowed to observe Kirk's struggles with police officers in the lineup. A pretrial lineup will not be deemed impermissibly suggestive where any suggestiveness was due to defendant's own contumacy and personal refusal to behave unobtrusively. *State v. Radford*, 559 S.W.2d 751, 753 (Mo.App.1977). Appellant's first point is overruled.

Appellant next argues that the in-court identifications were tainted by the impermissible out-of-court identifications. The central issue in identification questions is reliability. *State v. Higgins*, 592 S.W.2d 151, 160 (Mo. banc 1979). Had the out-of-court identification procedures in this case been deemed suggestive, they still would not invalidate a reliable in-court identification. *State v. Kiplinger*, 591 S.W.2d 207, 209 (Mo.App.1979). An in-court identification which is based on a recollection independent of the pretrial identification will be deemed proper. *State v. Berry, supra,* 609 S.W.2d at 953. Both witnesses were in a small, brightly lit office with the robber for approximately four minutes. His face was never covered. At trial, both were able to positively and unequivocally identify Kirk. These identifications were reliable. The point is overruled.

In his next point, appellant contends that the trial court committed plain error in allowing improper questioning of defense witnesses. Appellant's sister provided him with an alibi for the night of the robbery. At trial, she was questioned about whether she had received permission of her parole officer to make a trip out of state the day following the robbery. She was also questioned about why she had not approached the prosecution or the police with her alibi

information. Another witness, appellant's girlfriend, was cross-examined about the number of times she visited appellant in jail. Appellant argues this line of questioning was designed to prejudice the jury against him, the witnesses, and his alibi.

The credibility of a witness may be impeached by cross-examination. *State v. Dunn*, 577 S.W.2d 649, 653 (Mo. banc 1979). A trial court has much discretion in determining the extent of cross-examination, particularly as to collateral matters. *State v. Cox*, 360 S.W.2d 668 (Mo.1962); *State v. Winn*, 324 S.W.2d 637 (Mo.1959); *State v. Cutts*, 600 S.W.2d 75 (Mo.App. 1980); *State v. Dixon*, 566 S.W.2d 254 (Mo. App.1978).

Defense counsel made no objection to the inquiry concerning the parole officer. Indeed, he referred back to the issue on redirect examination. No objection was made when Kirk's fiancee was questioned about her visits to the jail. To queries concerning whom she had approached with her alibi, the witness responded that she had told her story to the public defender representing her brother at the time. The prosecution made no improper attempt to discredit this response. There was no manifest prejudice in these inquiries. The point is overruled.

For his next point, appellant argues that the trial judge erred when he made improper contact with the jury to inform them that they should fill out dinner menus unless they believed they could reach a verdict in less than one hour. He contends the effect of this communication coerced the jury into reaching a verdict.

The judge, in accordance with his usual custom in a criminal case, instructed the bailiff to take menus from a local restaurant to the jury room at 5:30 p. m. The bailiff instructed the jury it would take an hour to serve a meal so they should order dinner unless they could reach a verdict within any reasonable time of less than one hour. The bailiff was advised the jury did not wish to order as they thought they

would be reaching a verdict in less than an hour. At 6:13 the jury returned its verdict.

This Court is satisfied the foregoing communication had no effect whatever on the jury's deliberations or the verdict. The trial court had to find out if the jury desired dinner. In the future, it would be preferable if reference to when they might reach a verdict were deleted. The jury could be told it will take a certain amount of time to fill dinner orders and asked if they desire to do so. No perceivable prejudice resulted on this occasion. The point is overruled.

In his final point, appellant alleges that the information failed to apprise him of the statute under which he would be sentenced because the information cited § 558.016 and appellant contends he had to be sentenced pursuant to § 557.036. Appellant argues that § 558.016, RSMo 1978, did not authorize a court to impose an extended sentence for a defendant convicted of a Class A felony. This is correct. Nevertheless, the statute effective January 1, 1979, was not in effect at the time the instant crime was committed or when appellant was sentenced. The 80th General Assembly repealed and enacted a new § 558.016, effective August 13, 1980. The new statute provided in part, "4. The total authorized maximum terms of imprisonment for a persistent offender or a dangerous offender are: (1) For a class A felony, any sentence authorized for a class A felony . . . ." Section 558.016.4(1), 1980 Laws of Mo. 495. The trial court had jurisdiction to sentence appellant as it did under the then effective § 558.016. The point is overruled.

The judgment is affirmed.

All concur.