STATE of Missouri,
Plaintiff-Respondent,

v.

Leatrice LITTLE, Defendant-Appellant.

No. 65666.

Supreme Court of Missouri,
En Banc.

July 17, 1984.
Rehearing Denied Sept. 11, 1984.

Carolyn Whitehorn-Seymour, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Melinda Corbin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BLACKMAR, Judge.

Defendant appeals his convictions of first degree burglary[1] and forcible rape[2] for which he received consecutive sentences of 5 and 20 years. The Missouri Court of Appeals reversed and remanded for a new trial, concluding that the state had failed to demonstrate that photographic and standing lineups received in evidence were not tainted by hypnotic procedures which the victim and another key witness had undergone. That court then transferred the case here because of possible conflict with *State v. Greer*, 609 S.W.2d 423 (Mo.App.1980). We consider all points as on original appeal, and now affirm.

According to the state's evidence, defendant raped M.B.G. in her basement apartment during the early evening hours of August 13, 1980, after entering through a window, hiding in her bedroom closet and awaiting her return from work.

Identification was the only substantial issue at trial. The victim identified the defendant in court and testified to her earlier identification in photographic and standing lineups. She stated that defendant wore one of her blouses over his head during the incident, but that for at least two seconds she did get a clear view of his right profile. Another witness, Joseph Mosby, had been working outside the apartment shortly before the rape incident. He tentatively identified the defendant in a lineup, but, after skillful cross-examination at trial, said that he was uncertain of his identification. A police officer hearing a radio report of the rape while patrolling in his car stated that he approached a man which he identified as the defendant, and that the man fled when he stopped his patrol car. The defendant took the stand to deny the charges and produced several alibi witnesses who testified that he was present in Poplar Bluff, 78 miles away, at or about the time of the rape.

## I.

Although the court of appeals thought that this case might be an appropriate vehicle for detailed exposition of the law relating to testimony aided by hypnosis, we do not find any basis for a conclusion that the identification testimony was tainted by improper suggestion.

██ The rape occurred August 13, 1980. The victim described her attacker to the investigating officers. Although she had only a brief glimpse of the right side of his face, she was positive in her identification, and her testimony, absent a showing of improper suggestion, may be weighed by the jury. *State v. McGee*, 447 S.W.2d 270, 272 (Mo. banc 1969), *cert. denied*, 397 U.S. 1056, 90 S.Ct. 1400, 25 L.Ed.2d 672 (1970).

On August 15, 1980 the victim underwent a hypnotic interview conducted by Officer B.J. Lincecum of the Cape Girardeau Police Department. Her sister went along to witness the session but did not speak during the interview. The session lasted several hours. A voice tape was made but unfortunately was destroyed after 15 days in accordance with departmental policy. There is absolutely no indication that any kind of suggestion was made to the victim during the interview. The victim, her sister, and Officer Lincecum all testified emphatically that there was no such suggestion. The police had no suspect at the time. The victim said that she saw the incident again during the session, but added nothing to her prior description.

The victim viewed photographic displays on October 16, November 5 and November 10 of 1980. The defendant's picture was not included in any of these lineups. She

1. Section 569.160, RSMo 1978.

2. Section 566.030.1, RSMo 1978.

pointed to a picture in the October 16th lineup which she said resembled the assailant more than did the other pictures, but said that the picture was not that of the rapist. On December 23, 1980, she was shown a photographic display containing the defendant's picture and she picked him out. Sometime between December 25 and 31, 1980, M.B.G. was shown two more photographs, one of the defendant alone and the other showing him prominently in a group shot. She identified him in both pictures. On January 26, 1981, she viewed a standing lineup of four individuals. She immediately eliminated two but wanted to check the other two further, asking that each display a right profile. She then identified the defendant as the person who raped her. At trial, she again made a positive identification of the defendant.

Mosby submitted to a hypnotic interview on September 5, 1980, also conducted by Officer Lincecum. His roommate went along as a witness but did not testify. These tapes were also destroyed pursuant to departmental policy. Both Lincecum and Mosby testified that no suggestion was made during the interview. The police had not identified any suspect by this time. Mosby had described the person he saw outside the apartment building as a "Mulatto." This description was not augmented as a result of the hypnotic session.

On February 9, 1981, Mosby picked the defendant out of a photo lineup but said that he was not "100% sure" of his identification. He made a tentative identification in a standing lineup on April 4, 1981, but again said that he was not 100% sure. His initial identification at trial was likewise tentative and, following cross-examination, he said that he could not identify the defendant in the courtroom as the person he had seen outside the apartment building.

■■■■ The defendant protests vehemently about the destruction of the tapes of the hypnotic interviews. The tapes were erased for reuse, pursuant to departmental practice, after 15 days. There is no indication of deliberate purpose of concealment of the subject matter of the interview. So far as the evidence shows, the police had no suspect and no leads at the time of the erasure. If the department is to make use of hypnotic procedures, with the surrounding aura of mystery perceived by the public, it would be better for all and would induce greater confidence in the system of justice if the tapes are preserved. (We are told that the department has now changed its policy). No rule of law, however, provides for automatic sanction simply because of the destruction of data which might assist in the evaluation of evidence, when there is no intimation of ulterior motive.[3] The facts surrounding the hypnotic interview may be established by such competent evidence as may be available, including the testimony of the subject, the hypnotist, and other witnesses. The jury may weigh the testimony and then give such weight as it thinks appropriate to the destruction of the tapes.

■■■■ We recognize the duty of the court to examine into claims of taint in the evidence.[4] This is especially important when assertions of undue suggestiveness are made. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The uncontradicted evidence shows, however, that no suggestion whatever was implanted at the time of the hypnotic interviews, or that the police had anything to suggest. The

---

3. The United States Supreme Court recently held that the constitutional duty of the states to preserve evidence is limited to evidence that might be expected to play a role in the suspect's defense. The evidence must possess an exculpatory value that was apparent before it was destroyed, and must also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *See California v. Trombetta,* —— U.S. ——, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), in which the Court held that the fourteenth amendment's due process clause does not require state law enforcement agencies to preserve, for defense use at trial, breath samples of suspects tested on a breath-alcohol level analysis instrument.

4. *State v. Boothe,* 485 S.W.2d 11 (Mo. banc 1972); *State v. Walters,* 457 S.W.2d 817 (Mo. 1970); *State v. Harris,* 571 S.W.2d 443 (Mo.App. 1978).

defendant was not shown to be a police character. Officer Lincecum was not otherwise involved in the investigation of the case, and was not familiar with details of the offense. Neither witness made an identification, firm or tentative, until many months after the hypnotic interview. Neither interview yielded additional information. The question of taint by suggestiveness is a preliminary question of fact addressed to the court. The defendant has the burden of adducing facts which indicate some sort of taint, in order to present the question of suggestiveness for decision. No such demonstration has been made in this case. There is no occasion for overturning the trial court's ruling.

The defendant protests because of the hypnotist's assertedly inadequate qualifications. He had no academic background. His training had consisted of four days of eight hours of instruction. He was cautioned to use hypnotic techniques only in interviews and not to attempt psychological experiments such as trying to help people stop smoking. There is no reason to inquire, in this case, as to whether the training shown by the record was adequate to make Lincecum an expert hypnotist, because the record is devoid of information as to how his ineptitude, if inept he be, contributed to an improperly suggestive session.

The defendant complains that the funds of the public defender's office were not adequate to permit suitable investigation of

the possibility of inappropriately suggestive influences. There is nothing to show that any deeper inquiry would have been fruitful. There is a state university in Cape Girardeau with a faculty of Psychology and library facilities, and we are confident that a resourceful lawyer would not be helpless in obtaining expert information sufficient for a preliminary inquiry, at little or no expense.

There is, furthermore, no indication that the witnesses reacted in a way indicative of improper suggestion. The victim gave negative answers when presented with three successive photo lineups before picking the defendant out of the fourth one. Mosby never came up with a positive identification.

*State v. Greer, supra,* discussed the responsibility of the court to determine that identification procedures were not unduly suggestive, in a case in which it appeared that "the police had come up with more information than they had prior to the session." Judge Manford engaged in a thorough and impressive analysis, on matters which were necessary to the decision in that case. His opinion is highly persuasive. We do not reach the points he covered, because of the total absence of any indication that the hypnotic procedures employed in this case had any effect whatsoever, and there is no occasion for us to comment further or to consider the cases which have been decided in other jurisdictions since *Greer.*[5] The record before us demon-

---

5. The Court of Appeals discussed the following cases that have been decided since the decision in *State v. Greer,* 609 S.W.2d 423 (Mo.App.1980):

1. Latest case holding that pretrial hypnosis does not render resulting identification and testimony inadmissible.

*State v. Brown,* 337 N.W.2d 138 (N.D.1983).

2. Party attempting to use hypnotically affected testimony should have burden of demonstrating that hypnotic session was not affected by impermissible suggestiveness.

*Commonwealth v. Kater,* 388 Mass. 519, 447 N.E.2d 1190 (1983).

*People v. Hughes,* 59 N.Y.2d 523, 466 N.Y.S.2d 255, 453 N.E.2d 484 (1983).

*State v. Beachum,* 97 N.M. 682, 643 P.2d 246 (Ct.App.1981).

*State v. Armstrong,* 110 Wis.2d 555, 329 N.W.2d 386 (1983), *cert. denied,* — U.S. —, 103 S.Ct. 2125, 77 L.Ed.2d 1304 (1983).

*Contra State v. Hurd,* 86 N.J. 525, 432 A.2d 86 (1981) holds that burden is on the defendant to show suggestiveness.

a. Where hypnotic session is found to be suggestive the state must demonstrate that the in-court identification has a factual basis independent of the hypnotic session.

*Peterson v. State,* 448 N.E.2d 673 (Ind.1983).

*Strong v. State,* 435 N.E.2d 969 (Ind.1982).

3. The *Frye* Test (*Frye v. United States,* 293 F. 1013 (D.C.Cir.1923)) governs the admissibility of scientific evidence.

*State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266 (Ariz. banc 1982).

*People v. Shirley,* 31 Cal.3d 18, 181 Cal.Rptr. 243, 641 P.2d 775 (Cal. banc 1982), *cert. de-*

strates adequately that the trial court did not err in refusing to suppress the lineup and trial identifications.

## II.

The defendant also argues that the pretrial identification lineups at which he was identified were unduly suggestive, apart from the hypnosis. The point is not persuasive. The first identification was in a photographic display on December 23, 1980. The trial judge determined that the photographs presented a proper display, with no indication of improper suggestion. The first display at which identification was made came four months after the victim had submitted to the hypnotic interview. The defendant fails to convince us that the trial judge erred in allowing testimony about the lineups.

■■■ Sometime between December 25 and 31, 1980, following the lineup identification, the victim viewed two pictures of the defendant, one of which showed him alone while the other showed him as the most prominent individual in a group. The effect of this display was not shown to be more than minimal. The showing of a single picture of a suspect is not necessarily prejudicial, and does not inherently taint an in-court identification. *State v. Kirksey,* 647 S.W.2d 799 (Mo. banc 1983). We cannot say that the trial judge erred in admitting evidence of the photographs displayed to the victim. The record shows affirmatively that she was careful in her identification.

■■■ The defendant points to the difference in appearance of the several people shown in the photographic and standing lineups. Identical appearance is not required, and, indeed, is impossible. *State v. Kirk,* 636 S.W.2d 952 (Mo.1982). There is no showing of an attempt to establish a

lineup in which only the defendant would be picked out.

As for the lineups viewed by Mosby, both photographic and standing, the short answer is that he failed to make a positive identification of the defendant. Any claim of error pales before this circumstance.

## III.

■■■ The defendant argues that the court fell into error in refusing his tendered identification instruction. The court well might have exercised its discretion by giving the instruction offered, but our cases do not require it. The identification of the defendant as the criminal actor is an essential part of the state's burden of establishing guilt beyond reasonable doubt. The instruction is essentially argumentative and redundant. Our courts shy away from instructions of this kind. Thus, the defendant in a negligence case is not entitled to a "sole cause" instruction, because an occurrence which is solely caused by some other factor is not caused by the defendant's negligence, and the verdict director adequately tells the jury that it must find negligence. MAI 1.03. Here the facts would have justified the former practice of giving, at the prosecution's request, an instruction that the defendant's flight from the officer who confronted him shortly after the rape could be taken as evidence of consciousness of guilt, but MAI–CR2d 5.40 now states explicitly that no "flight or concealment" instruction is permitted to be given. MAI does not forbid the giving of an identification instruction, but the issue of identification is inherent in the state's verdict director and the trial court's refusal of the instruction is not ground for reversal. *State v. Higgins,* 592 S.W.2d 151, 161 (Mo. banc 1979).

The judgment is affirmed.

All concur.

*nied,* 458 U.S. 1125, 103 S.Ct. 13, 73 L.Ed.2d 1400 (1982).

*Collins v. State,* 52 Md.App. 186, 447 A.2d 1272 (1982).

*Polk v. State,* 48 Md.App. 382, 427 A.2d 1041 (1981).

4. Situations where the witness was unable to identify the incident or culprit prior to hypnosis.

*State v. LaMountain,* 125 Ariz. 547, 611 P.2d 551 (Ariz. banc 1980).

*People v. Gonzales,* 108 Mich.App. 145, 310 N.W.2d 306 (1981).