STATE of Missouri, Plaintiff-Respondent,

v.

Darwin E. CONLEY, Defendant-Appellant.

No. 49355.

Missouri Court of Appeals, Eastern District, Division Three.

June 28, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1985.

Application to Transfer Denied Nov. 21, 1985.

Sarah S. Pleban, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Mary Elise Burnett, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRIST, Judge.

Defendant appeals his jury convictions of rape, kidnapping, first degree robbery, and two counts each of sodomy and armed criminal action. He received sentences aggregating a total of 115 years, to be served consecutively to each other and to sentences imposed in another case. We affirm.

At about 1:00 a.m. on September 29, 1983, the victim returned home from work. As she left her car, a man later identified as defendant "popped out" in front of a car with a gun. He took victim's purse, then ordered her to go with him. Defendant and another man placed a jacket over her head, forced her into a car, and drove away. They proceeded for approximately 10 minutes, then stopped and walked to a grassy area. There victim was raped and sodomized by both men. She was then ordered to lie there while the men left. She then went to a nearby apartment building. The police were called, and victim was taken to the hospital where she was treated and samples were taken for analysis.

The victim was unable to give an extensive description of her assailants, describing defendant only as a Negro male, 25 to 30 years old, 5'9" tall, 150 pounds, thinly built, short hair, with no facial hair, wearing a brown jacket without fur. The investigation continued for several weeks without marked success. A month after the assault, the victim was shown a composite drawing, the subject of which had some features similar to those of defendant. She could not identify the composite as a drawing of her assailant.

As a last resort, victim was hypnotized by a detective who had recently undergone 64 hours of training in hypnosis. During the one-half hour she was hypnotized, victim was questioned concerning the assault. No new information was gained during this session. The description of the assailant given under hypnosis differed from that given earlier only in minor respects. Defendant was described as an inch or two shorter and 10 pounds heavier than before, and wore wire-rimmed sunglasses. When asked specifically if the assailant had crossed eyes she said they were "kind of big." (Defendant has an eye muscle problem which gives him the appearance of crossed eyes.)

A few days later, victim was shown five photographs, two of which she picked as depicting her assailants. One of the photographs picked was of defendant. At a subsequent line-up, defendant was identified again. Defendant confessed to the crime. In his statement, he tried to place the blame mostly on the other assailant. He repudiated his confession at trial, claim-

ing he had been beaten and his confession was coerced. Instead, he presented an alibi defense.

 Defendant challenges the admission of victim's testimony. He claims hypnosis is not an acceptable technique for refreshing or enhancing memory, it deprives defendant of the right to confront and cross-examine adverse witnesses, and the session was improperly conducted by unqualified personnel. This allegedly tainted the identification of defendant with unduly suggestive procedures, and rendered the identification inadmissible under *State v. Little*, 674 S.W.2d 541, 542[1] (Mo.banc 1984). We find no basis in the record for such conclusion.

The hypnotic session, conducted by an officer with 64 hours of training, was taped, and the tape of the session was played for the jury by the defense. This tape clearly shows no suggestions were implanted, the session was not conducted in an inept or suggestive manner, and the victim had not "reacted in a way indicative of improper suggestion." *Id.* at 544. There were no significant differences between victim's statements given before the session, and those elicited during or after the session. *State v. Greer*, 609 S.W.2d 423, 434–35 (Mo.App.1980). There is no showing of any effect on victim's memory in any way. *State v. Williams*, 662 S.W.2d 277, 280–81 (Mo.App.1983). As the record demonstrates no suggestive taint to victim's testimony, we find no error in admission of that testimony. *Little*, 674 S.W.2d at 542–545.

 Defendant, in his other point on appeal, challenges the admission of testimony by a forensic scientist concerning the contents of a report indicating the presence of semen in samples taken from victim. It is claimed the testimony of the witness was wrongly admitted because he lacked qualifications and because he had no personal knowledge of the test actually conducted on the samples. The question of the qualifications of an expert witness is a matter for the exercise of discretion of the trial court, which will not be reversed except for abuse. *State v. Garrett*, 682 S.W.2d 153, 155[6] (Mo.App.1984). We find no such abuse.

 Walsh, a forensic scientist with a Bachelor's degree in Chemistry, was the senior forensic scientist with the St. Louis County Police Department. As senior scientist, he had a minimum of two years experience and on-the-job training in all areas of forensic science. He testified concerning tests performed by his predecessor, whose qualifications are not challenged. Walsh was sufficiently qualified to testify as an expert witness. *State v. Rhone*, 555 S.W.2d 839, 841–42 (Mo.banc 1977). His lack of experience in investigating sexual offenses went to the weight of his testimony and not its admissibility. *State v. Means*, 628 S.W.2d 426, 429 (Mo.App.1982). The testimony concerning the samples contained no assumptions as to the tests actually performed. Walsh testified, as an expert forensic scientist, as to the tests performed on such samples. This was sufficient.

Judgment affirmed.

DOWD, P.J., and CRANDALL, J., concur.