STATE of Missouri,
Plaintiff–Respondent,

v.

Weldon Eugene RICHARD, Sr.,
Defendant–Appellant,

and

Weldon Eugene RICHARD, Sr.,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16333, 16814.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 25, 1990.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Oct. 16, 1990.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Raymond L. Legg, Janet M. Thompson, Columbia, for defendant-movant-appellant.

PREWITT, Judge.

Following jury trial, appellant was convicted of two counts of selling controlled substances, Count One, marijuana, and Count Two, amphetamines. He was sentenced to concurrent terms of five and ten years' imprisonment. Following that conviction, he filed a Rule 29.15 motion. It was denied after an evidentiary hearing. Appellant's appeal from his criminal convictions and the appeal from the denial of his Rule 29.15 motion have been consolidated here. Rule 29.15(*l*). Appellant presents three points for our review.

Appellant's first point, the only one related to his direct appeal from the conviction, is based on a claim of destruction of evi-

dence by the Jasper County Sheriff's office. He claims his due process rights under the United States and Missouri Constitutions were denied because a recording of a purported conversation between him and an undercover sheriff's deputy was destroyed, depriving him "of the ability to investigate and test the testimony" of the principal witness for the state.[1]

The direct evidence against appellant was testimony from an undercover sheriff's deputy, Jim Maddock. While meeting with appellant on September 1, 1988, at appellant's residence, Maddock attempted to record on tape their conversation. They talked both outside the house on a porch and inside it. Maddock testified that during the meeting he bought marijuana from appellant and appellant told him "if he ever sold to someone and they busted him, that he would shoot them." A written report made by Maddock of the conversation does not refer to the threat. Appellant testified he had never met Maddock.

Previous to trial, appellant filed a motion to dismiss the information because the sheriff's office erased the recording on the tape. Deputy Sheriff Larry Parrill, who Maddock reported to regarding the investigation involving appellant, testified at the hearing on the motion that Maddock told him that upon playing the tape, he could not hear any conversation because of sounds from a television. Parrill testified at that hearing that Maddock reused the tape, which erased the sounds recorded during the conversation. At trial Parrill testified that he "taped over it". Parrill said he had "heard" that tapes can be filtered and enhanced by experts.[2]

Following the hearing on appellant's motion to dismiss, the trial judge, saying that

such tapes cost in the neighborhood of 69 to 89 cents, expressed dissatisfaction with it being erased. He said it should have been preserved and given to appellant, but found that bad faith was not shown and denied appellant's motion to dismiss.

Appellant and respondent do not make a distinction between the due process requirements of the United States and Missouri Constitution. The parties both cite and discuss *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). It required the defendant to show "bad faith" to receive relief from the negligent destruction of evidence that had the potential to be helpful to the defendant.

Appellant contends that *Youngblood* "should be viewed as the standard to apply when the police fail to take steps to properly preserve fragile evidence or to perform tests, not when the police actively destroy evidence as in the appellant's case." Appellant states that the standard of materiality in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), should apply here. There, the court said:

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the

1. Although not raised here, there is authority that the best evidence rule applies to tape recordings and "that secondary evidence may be admitted in lieu of the original [tape] if the original is unavailable provided that the original has not been destroyed, lost or become unavailable through the fault of the proponent and the secondary evidence does not appear to be untrustworthy." *State v. King,* 557 S.W.2d 51, 53 (Mo.App.1977). See also *State v. Snyder,* 748 S.W.2d 781 (Mo.App.1988); Annotation, *Admissibility in Evidence of Sound Recording as Af-*

*fected by Hearsay and Best Evidence Rules,* 58 A.L.R.3d 598 (1974).

2. A tape recording that has been enhanced to improve its audibility by filtering out background noises and improving clarity of voices is admissible. *United States v. Carbone,* 798 F.2d 21, 24 (1st Cir.1986); *United States v. Gordon,* 688 F.2d 42, 43–44 (8th Cir.1982); *Fountain v. United States,* 384 F.2d 624, 632 (5th Cir.1967); *People v. Marcus,* 31 Cal.App.3d 367, 107 Cal. Rptr. 264, 58 A.L.R.3d 594 (1973); *Annot.* supra n. 1, 58 A.L.R.3d at 614–617.

other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. 427 U.S. at 112–113, 96 S.Ct. at 2401–2402.

*Agurs* did not involve the destruction of evidence, but its analysis might be of aid here if the record showed what, if anything, the tape would have disclosed. There is nothing to indicate if the tape would have added anything to the proceedings either for or against the defendant.

*State v. Petterson,* 780 S.W.2d 675 (Mo. App.1989), involved a charge of driving while intoxicated. Following defendant's arrest, his interrogation was recorded on tape. A highway patrolman testified that the tape was handed over to the former county prosecutor and after an effort to locate it prior to trial, it was presumed lost. The court found no denial of due process, noting that without a showing of bad faith it would "not attempt to determine the exculpatory merit of such evidence." *Id.* at 679. See also *State v. Hamilton,* 791 S.W.2d 789, 799 (Mo.App.1990) (no "bad faith" shown as "there was no evidence the state intentionally failed to preserve" a semen stain).

Bad faith is not defined in *Youngblood, Petterson,* or *Hamilton. Hamilton* requires that the state act intentionally but does not reach whether law enforcement personnel must know the evidence would help the defendant. Respondent argues that "bad faith" requires the evidence to be destroyed, knowing it would hamper the prosecution's case or aid the defense. See *State v. Belle,* 215 Conn. 257, 576 A.2d 139, 143–147 (1990).

Tapes of a hypnotic interview were destroyed pursuant to the police's "departmental practice" in *State v. Little,* 674 S.W.2d 541 (Mo. banc 1984). The court stated that the United States Supreme Court:

> recently held that the constitutional duty of the states to preserve evidence is limited to evidence that might be expected to play a role in the suspect's defense. The evidence must possess an exculpatory value that was apparent before it was destroyed, and must also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. See *California v. Trombetta,* [467] U.S. [479], 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

*Little,* 674 S.W.2d at 543 n. 3.

*Little* noted that at the time the tapes were made there were no suspects and although "it would be better for all and would induce greater confidence in the system of justice if the tapes are preserved.... No rule of law, however, provides for automatic sanction simply because of the destruction of data which might assist in the evaluation of evidence, when there is no intimation of ulterior motive." *Id.* at 543.

*Little* is binding on us. Mo. Const. Art. V, § 2. It says there is no constitutional duty to preserve evidence unless it was evident that it would aid the defendant. *Little* based its conclusions on *Trombetta,* involving the failure to preserve breath samples of suspects tested on a breath-alcohol level analysis instrument. We read *Trombetta* the same. It states:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v. Agurs,* 427 US, at 109–110, 49 L Ed 2d 342, 96 S Ct 2392 [2400–2401], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. at 488–489, 104 S.Ct. at 2534.

In saying that the exculpatory value must be "apparent", the court must mean apparent to those destroying the potential evidence. As in *Trombetta,* and here, law enforcement personnel would ordinarily be the only persons responsible for, and having access to, the potential evidence until

charges are brought. Further, in *Youngblood,* the court states in a footnote that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 288–289.

If "bad faith" only occurs when police officers destroy evidence knowing it has "exculpatory value", then a defendant faces an almost impossible burden to show bad faith. Law enforcement personnel are unlikely to admit to the criminal offense of tampering with evidence. See § 575.100, RSMo 1986. Where the effect of the potential evidence can no longer be determined, it would be extremely unusual for a defendant to be able to show that the evidence would have helped him.

Here, the destruction was intentional, based upon a claimed determination that the conversation, at least part of which occurred outside a house, was so distorted by a television speaker within the house, that it could not be heard. Even if so, the tape had the potential, perhaps through expert filtering, or otherwise, to be heard, and its content may have contradicted or impeached all or a part of Maddock's testimony. The tape not only had the potential to aid defendant, it could have exonerated him of the first count, and may have been crucial to the second.

Nevertheless, *Youngblood, Trombetta* and *Little* are binding on us on the issue presented, and as there was no evidence that before the tape was erased it possessed an exculpatory value which should have been apparent to the deputies, this point must be denied.

Appellant contends in his second point that the trial court erred in denying his motion for postconviction relief because he was denied effective assistance of counsel "in that trial counsel's multiple representation of appellant and Ramonda Robinette, appellant's paramour, created an actual conflict of interest".

Ramonda Robinette had lived with appellant for approximately two years before his arrest and was the mother of appellant's two children. She was charged with the sale of marijuana, unrelated to the charges against appellant. Appellant contends that there was an actual conflict because her testimony could have aided him and appellant's trial counsel testified at the motion hearing that he did not want to affect Robinette's chances of being placed on probation by using her as a witness at appellant's trial.

Ramonda Robinette testified at the hearing on movant's motion for postconviction relief. However, there was no evidence that she would have testified in the criminal trial or that her testimony would have aided appellant.

Appellant had the burden of proving his grounds for postconviction relief by a preponderance of the evidence. Rule 29.15(h). "To sustain a claim of ineffective assistance of counsel movant must establish that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability being a probability sufficient to undermine confidence in the outcome." *Tatum v. State,* 693 S.W.2d 903, 904 (Mo.App.1985).

To establish ineffective assistance of counsel for failure to present a witness, appellant had to prove that the witness would have testified if called, and that the witness's testimony would have aided his defense. *Conrad v. State,* 780 S.W.2d 725, 726 (Mo.App.1989). Appellant failed to show that Robinette would have testified and that her testimony would have sufficiently aided him to have undermined confidence in the outcome. Appellant did not meet his burden of proof. Point two is denied.

For his third point, appellant contends that the court erred in not making "specific and more complete findings of fact and conclusions of law denying appellant's motion for postconviction relief because such failure by the motion court deprives appellant of meaningful appellate review".

The trial court's findings of fact and conclusions of law are adequate when they enable an appellate court to determine whether they are clearly erroneous. *Huffman v. State*, 668 S.W.2d 255, 256 (Mo. App.1984). Although findings and conclusions are sparse, they are sufficient if they permit meaningful appellate review. *Wesson v. State*, 768 S.W.2d 160, 162 (Mo.App. 1989). The basis of the trial court's determination was sufficiently shown in its findings of fact and conclusions of law for us to review those findings, conclusions and the court's determination. Point three is denied.

The judgments are affirmed.

MAUS, P.J., and CROW, J., concur.