

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101577 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable John Francis Garvey Jr. |
| ROSCOE GREEN, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: September 15, 2015 |

### Introduction

Roscoe Green (Defendant) appeals his convictions for first-degree robbery and armed criminal action. Defendant contends the trial court abused its discretion in denying his motion to suppress the robbery victim's pretrial and in-court identifications of Defendant because the police's identification procedures were "so suggestive" that they created a substantial likelihood of misidentification. We affirm.

### Factual Background

On October 24, 2011, Defendant allegedly robbed Curtis Hayes and a week later, on Halloween, also robbed Stephen Jones. Regarding the latter incident, Jones was walking home at night when Defendant approached him with a gun and told Jones, "Everything you got." Jones gave Defendant his ice-cream, headphones, cellphone, and book bag, which contained a rare pair of Tim Hardaway Air Bakins size fifteen shoes. Both victims provided police with a

description of the robber. Several days later, in early November, officers responded to a robbery at a bus stop and, upon entering a residence to which the suspect had fled, discovered Jones's shoes in Defendant's possession. Defendant was arrested and subsequently placed in a police lineup with three other men. Both Hayes and Jones independently identified Defendant as the robber upon viewing the lineup. Defendant was charged with two counts of first-degree robbery and two counts of armed criminal action, as to Hayes and Jones respectively.

Before trial, Defendant moved to suppress the victims' pretrial identifications of Defendant, as well as all in-court identifications, on the basis that the police failed to choose similar looking participants and that the victims, therefore, identified Defendant because of his "individuality." After a hearing, the trial court denied the motion, finding that the officer who presented the lineup to the victims acted reasonably and in "no way created an environment which was suggestive of a positive identification [of Defendant]." Accordingly, the trial court concluded that the lineup was not unreasonably suggestive and permitted at trial the introduction of testimony concerning the victims' pretrial identifications, including a photograph of the live lineup, as well as the victims' in-court identifications of Defendant.

Ultimately, the jury found Defendant guilty of first-degree robbery and armed criminal action as to Jones, but acquitted Defendant of those same charges with respect to Hayes. The trial court entered a judgment consistent with the jury's verdict and sentenced Defendant as a prior and persistent offender to concurrent terms of 15 years' imprisonment for each count. Defendant appeals.

### Standard of Review

At the outset, we note that the parties dispute the applicable standard of review. The State argues that Defendant did not properly preserve his claim because defense counsel did not

object to Jones's testimony regarding his pretrial identification of Defendant or to his testimony identifying Defendant in court. The State further points out that Defendant stated, "No objection," when the State introduced the photograph of the lineup into evidence. Defendant requests that if we find the issue unpreserved for appeal, we review for plain error.

The State is correct in its recitation of the record. Generally, to preserve an evidentiary error for appellate review, a party must contemporaneously object to the admission of evidence; and, stating "no objection" to the introduction of evidence precludes direct appellate review of the admission. *See State v. Baker*, 103 S.W.3d 711, 716 (Mo. banc 2003). However, during the State's case-in-chief, defense counsel realized that she had "erroneously not preserved" Defendant's pretrial motion to suppress the identification and subsequently objected to preserve the motion. The trial court acknowledged counsel's failure, but noted that "now the proper objection has been made" and overruled Defendant's objection subject to its previous ruling on the motion to suppress. Under these circumstances, we will review the issue on the merits. *See State v. Mondaine*, 178 S.W.3d 584, 588 (Mo. App. E.D 2005) (reviewing evidentiary claim on the merits where defense counsel failed to object to the admission of evidence, affirmatively stated "no objection," and the trial court "overlook[ed]" this failure and ruled on the motion).

"In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Nelson*, 334 S.W.3d 189, 193 (Mo. App. W.D. 2011). "[W]e review the facts and inferences therefrom in the light most favorable to the trial court's ruling, and disregard all contrary inferences." *State v. Murray*, 428 S.W.3d 705, 709 (Mo. App. E.D. 2014) (citation and quotation omitted). Further, we will not disturb the trial court's decision to admit or exclude the identification testimony unless there has

3

been an abuse of discretion. *Nelson*, 334 S.W.3d at 193. "Error in the admission or exclusion of evidence does not justify reversal unless the error was so prejudicial that it deprived the defendant of a fair trial such that the verdict would have been different." *State v. Washington*, 444 S.W.3d 532, 536 (Mo. App. E.D. 2014).

## Discussion

In his sole point, Defendant claims that the trial court erred in denying his motion to suppress Jones's pretrial and in-court identification of Defendant because the lineup procedures were "so suggestive" that there was a substantial likelihood of Defendant's misidentification. Specifically, Defendant contends that the lineup was unduly suggestive because Defendant was the only participant with both physical characteristics (height and hair) described by Jones and because the police allowed the victims "to discuss the details of their cases immediately before each would select a suspect from the lineup."

In considering whether evidence of a pretrial identification of a defendant is admissible, courts use a two-step test. *State v. Chambers*, 234 S.W.3d 501, 513 (Mo. App. E.D. 2007). First, the court will determine if the pretrial identification procedure was unduly suggestive. *Id.* If the procedure was impermissibly suggestive, the court then determines whether the suggestive procedure led to an unreliable identification. *Washington*, 444 S.W.3d at 537. If the pretrial identification procedures are not found to be unreasonably suggestive, it is not necessary nor appropriate for a court to review the reliability of the identification. *Chambers*, 234 S.W.3d at 513.

A pretrial identification procedure is unreasonably suggestive if the identification results not from the witness's memory, but from the procedures or actions employed by the police. *Id*. When selecting a lineup, police must make a reasonable effort to find physically similar

4

participants. *State v. Anthony*, 857 S.W.2d 861, 867 (Mo. App. W.D. 1993). Lineup participants will never be identical, and the law does not require exact conformity to ensure a fair procedure. *State v. Williams*, 18 S.W.3d 425, 432 (Mo. App. S.D. 2000). Mere differences in physical characteristics are insufficient to establish an unduly suggestive lineup. *Anthony*, 857 S.W.2d at 867.

At the suppression hearing and trial, Detective Angela Hawkins testified to the process used for creating a lineup at the St. Louis Justice Center, which was used to create Defendant's lineup. Hawkins explained that, generally, a lineup contains three to five participants, depending on the available population pool at the Center, and that officers choose candidates from both the first and second floor of the Center who are "as similar as can be" to the physical description of the suspect.[1] The photograph of the lineup, introduced at trial, shows that the lineup included four participants. Hawkins testified that all participants had similarly shaped eyes and noses and three of the four had similarly shaped faces.

Hawkins further testified that she coordinated the victims' viewing of the lineup. Specifically, Hawkins explained that she spoke to both victims outside the viewing room and explained to them that "the person who is responsible for robbing them may or may not be present in the lineup that they were about to view, and . . . that they [had] no obligation to feel any pressure to identify [a] person or, . . . not identify [a] person." Hawkins testified that she then took Jones into the viewing room alone and advised him that if he did "see somebody that he recognized, to let [her] know . . . ." According to Hawkins, Jones's main characteristic for identifying Defendant was how the "suspect's eyes looked." Hawkins explained that when she and Jones entered the viewing room, Defendant was looking down, but as soon as he looked up, Jones immediately identified Defendant and said he was "a hundred percent certain" that

---

[1] Hawkins stated that, to the best of her knowledge, the police followed this protocol in the instant case.

5

Defendant was the individual who had robbed him. When Jones exited the viewing room, Hawkins said that she made sure Jones did not speak to the other victim.

Under these circumstances, viewing the evidence in the light most favorable to the trial court's ruling, we cannot conclude that these identification procedures were unreasonably suggestive. The police followed departmental protocol and made a reasonable effort to select members from the population pool at the Justice Center who most resembled Defendant. The photograph of the lineup shows that the lineup participants were of the same race with similar skin tone; of similar age; had similarly shaped mouths, noses, eyes, and face shapes; and had a lack of abundant facial hair. Further, the photograph reflects that all the participants had unbraided, short cropped hair of varying lengths and that all of the participants were reasonably close in height and weight to Defendant's build.[2] While some differences do exist between the participants, for example Defendant's hair had more volume than the hairstyle of the other participants, none of these physical dissimilarities were so egregious as to create an unduly suggestive lineup. Moreover, when Hawkins presented the lineup to Jones, she did not pressure Jones to make a selection or suggest that the culprit was in the lineup; rather, Hawkins indicated to Jones that the robber may or may not be in the lineup. Jones then identified Defendant based on his independent recollection of Defendant's build and face. Indeed, at trial Jones testified that he identified Defendant in the lineup because he had "made a mental note" of what Defendant looked like. Specifically, Jones indicated that he had noted that Defendant had his "body type . . . having a height[,]" was "dark skinned[,]" and had "eyes kind of like me."

Despite the neutrality of the police action, Defendant relying on *State v. Kirk*, 636 S.W.2d 952 (Mo. banc 1982), and *State v. Word*, 527 S.W.2d 708 (Mo. App. W.D. 1975), argues

---

[2] The least similar participant, who stood at position three, appears to be less than a head shorter than Defendant and to have a slightly stockier build, compared to the other slimmer participants. Of the other two participants, one was Defendant's height and the other was only slightly shorter.

that the police's lineup procedure was impermissibly suggestive because Defendant was the only person of his height and who had voluminous hair. In *State v. Kirk*, the Missouri Supreme Court held that a lineup procedure was not unduly suggestive where each of the participants' heights more closely matched the victim's description of the perpetrator than the height of the actual defendant. 636 S.W.2d at 954-55. Defendant, comparing *Kirk* to this case, asserts that, here, "none of the other participants reasonably approximated" Jones's description of the robber and that, therefore, under *Kirk* the lineup was unduly suggestive.[3] *Kirk*, however, does not stand for the proposition that a lineup is necessarily unduly suggestive where the actual perpetrator's physical attributes more closely matches the victim's description than that of the other participants. Police are only required to use reasonable efforts to find physically similar participants, and "differences in age, weight, height, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness." *Chambers*, 234 S.W.3d at 514. Here, the other participants did reasonably approximate Jones's description of the robber—all but one of the participants were close in height to Defendant and all had close-cut hair of varying volume. Defendant's reliance on *Kirk* is misplaced.

Defendant's reliance on *Word* is similarly unhelpful. In *Word*, the Western District found that a lineup was not impermissibly suggestive when the lineup "[did] not in and of [itself] produce any suggestion of the identity of the defendant as the culprit." 527 S.W.2d at 710. The participants had similar heights and builds and lacked "distinguishing characteristics," such as "facial scarring," that were so distinct as to eliminate any participant as a possible suspect. *Id.* Compared to *Word*, Defendant asserts that the lineup did in itself produce a suggestion of Defendant as the culprit because his unique distinguishing characteristics—his height and hair.

---

[3] Jones, who is 6'6", described the culprit to police as being "a little bit shorter" than him, possibly 6'2", and as having thick or voluminous hair.

7

*Word*'s reference to "distinguishing characteristics," however, is not reference to common-place attributes, like hair or height, but to characteristics of a different ilk, such as physical abnormalities. *Id.* Indeed, *Word* recognizes that "[t]he issue of differences in weight or complexion, or even height, as well as differences in hair styling, do not, in and of themselves, make a lineup unduly suggestive." *Id.* Here, just as in *Word*, the participants were sufficiently physically similar. Indeed, at least one other participant was the same height as Defendant and Defendant's stature and hairstyle was not so distinctive as to suggest him as the culprit. *See State v. Gates*, 637 S.W.2d 280, 285 (Mo. App. W.D. 1982) (that one participant has a physical feature more prominent than the other participants, such as an unusual height, does not necessarily invalidate an otherwise fair identification procedure).

Finally, Defendant argues that the identification procedure was unduly suggestive because the police allowed the victims "to discuss details and circumstances of their robberies immediately before" each individually viewed the lineup. Jones and Hayes did briefly share a waiting room, and each told the other that he had been robbed. However, they did not discuss specific details of the robberies, nor did they describe their assailants. After Jones identified Defendant in the lineup, Hawkins led Jones from the room and escorted Hayes in. They did not speak. Nothing in the record suggests that the victims consulted one another about the physical characteristics of the assailant.[4]

Having reviewed the record in a light most favorable to the trial court's decision, we conclude that sufficient evidence supports the court's finding that the lineup procedures were not impermissibly suggestive. On appeal, Defendant has failed to demonstrate otherwise.

---

[4] Defendant also argues that the police could have made a better effort to produce a more physically similar panel. However, the participants *were* sufficiently similar and, therefore, the police acted consistently with the law. *See Chambers*, 234 S.W.3d at 513-14 (police are only required to use reasonable efforts to find physically similar participants).

Accordingly, we need not review the reliability of the identification. *See Chambers*, 234 S.W.3d at 513. The trial court's decision to deny Defendant's motion to suppress Jones's pretrial and in-court identification of Defendant was not erroneous. Likewise, the trial court also did not abuse its discretion by permitting into evidence testimony and evidence related to Jones's pretrial and in-court identification of Defendant. Point denied.

### Conclusion

The trial court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J. concur.